452 So.2d 1208 (1984)
STATE of Louisiana
v.
Walter DAVIS.
No. 83-KA-836.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 1984.
*1209 William C. Credo, III, Asst. Dist. Atty., Parish of Jefferson, Gretna, for plaintiffappellee.
Lawrence E. Biri, Jr., Morrison & Biri, Metairie, for defendant-appellant.
Before BOWES, GAUDIN and GRISBAUM, JJ.
BOWES, Judge.
Walter Davis was charged by Bill of Information with possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. He was arraigned on July 7, 1983, and entered a plea of not guilty. On October 19, 1983, a hearing on defendant's motion to suppress the evidence was held, which motion the trial court denied. On October 27, 1983, the defendant withdrew his former plea of not guilty and entered a plea of guilty as charged, reserving his right under State v. Crosby, 338 So.2d 584 (La.1976), to appeal the trial court's ruling on his motion to suppress. The defendant waived legal delays for sentencing, and the trial court sentenced Davis to serve three years at hard labor without benefit of parole, probation or suspension of sentence. Defendant now appeals the trial court's ruling on the motion to suppress.
FACTS
During the late evening hours of June 3, 1983, defendant Walter Davis was a passenger in a vehicle which was owned by his wife and which was being driven by one Michael Williams. The car was travelling without running lights, brake lights or tail lights. As the vehicle proceeded north on Barataria Boulevard in Marrero, it was stopped by a police unit with flashing lights. Deputies Claude Wood (a reserve officer) and Wayne Kron, of the Jefferson Parish Sheriff's office, ordered the driver, Williams, from the vehicle and issued numerous traffic citations. The deputies then ran Williams' name over the police radio. This check produced an outstanding attachment from the City of Gretna. They, therefore, placed Williams under arrest, handcuffed him, and placed him in the rear of one of the vehicles.
What transpired next is a matter of dispute. The deputies testified at the motion to suppress that they noticed Davis was nervous, fidgety, and moving uneasily in the passenger seat of the stopped vehicle. Deputy Wood stated that Davis was ordered from the vehicle for safety reasons. Both officers claimed that as Davis exited the vehicle, they noticed a bulge under his shirt which they feared might be a weapon, and which, after a search of defendant, proved to be a gun. Davis was then arrested for carrying a concealed weapon.
Walter Davis, on the other hand, stated that after he exited the vehicle, the deputies asked him to produce identification and, when he was unable to do so, informed him he was under arrest for not having adequate identification. As he was placed on the side of the car and questioned by one officer, Davis testified, the other officer searched the automobile and returned with the pistol, for which Davis was arrested.
The trial judge made no factual determination as to which version he believed. In his oral reasons for denying the motion, he explained:

*1210 I think the officers have a right to make an investigatory stop and have these people certainly when they're caught [sic], which is readily admitted to by the defendant they were driving without brake lights.
Now whether the gun was on Mr. Davis or whether it was in the car it is still a constructive possession if it was in the car. And under those circumstances the court is going to deny the motion to suppress.
ASSIGNMENT OF ERROR
(excerpted from the record)
This trial court committed reversible error when it denied defendant's motion to suppress evidence illegally seized as a result of an unconstitutional and illegal search of the defendant's person, property, premises and effects, specifically, the unconstitutional and illegal search of the vehicle in which defendant was a passenger. This search was conducted by officers of the Jefferson Parish Sheriff's office.[1]
Defendant contends the weapon was seized in violation of his Fourth Amendment rights. Both the United States and Louisiana Constitutions prohibit unreasonable searches and seizures. U.S. Const.Amend. 4; La. Const. Art. 1, Sect. 5. A search conducted without a warrant is presumed unreasonable unless it is justified by one of the narrowly drawn exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Colvin, 358 So.2d 1250 (La.1978); State v. Williams, 366 So.2d 1369 (La.1978). The state bears the burden of proving that one of these exceptions applies. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Adams, 355 So.2d 917 (La.1978); State v. Blanchard, 374 So.2d 1248 (La.1979).
The state relies on Pennsylvania v. Mimms 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), to support its argument that the weapon in the instant case was legally seized. In that case police officers stopped the defendant's vehicle, which had an expired license plate, in order to issue a traffic ticket. One officer approached the defendant and asked that he step out of the car and produce his driver's license. As the defendant exited the vehicle, two officers noticed a bulge under his sport jacket. The officer frisked the defendant and found a revolver in his waistband. The U.S. Supreme Court, in upholding the seizure of the weapon, based its ruling on the standard of "the reasonableness in all the circumstances of the particular government invasion of a citizen's personal security." Terry v. Ohio, 392 U.S. 1, 19, 88 S.Ct. 1869, 1878-1879, 20 L.Ed.2d 889 (1968). The court asserted that this reasonableness depends "... on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers. [citation omitted]." Mimms, supra, 434 U.S. at 109, 98 S.Ct. at 332.
Using this test for reasonableness by balancing of interests, the Mimms court focused on the intrusion of the defendant's privacy resulting from the request to get out of the car once the vehicle was lawfully stopped, and reasoned as follows:
We think it too plain for argument that the State's proffered justificationthe safety of the officeris both legitimate and weighty. "Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." Terry v. Ohio, *1211 supra, 392 U.S. at 23, 88 S.Ct. at 1881. And we have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile. "According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile. Bristow, Police Officer ShootingsA Tactical Evaluation, 54 J.Crim. L.C. & P.S. 93 (1963)." Adams v. Williams, 407 U.S. 143, 148 n. 3, 92 S.Ct. 1921, 1924 [n. 3], 32 L.Ed.2d 612 (1972). We are aware that not all these assaults occur when issuing traffic summons, but we have before expressly declined to accept the argument that traffic violations necessarily involve less danger to officers than other types of confrontations. United States v. Robinson, 414 U.S. 218, 234, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Indeed, it appears "that a significant percentage of murders of police officers occurs when the officers are making traffic stops." Id., at 234, n. 5, 94 S.Ct. at 476. [...]
Against this important interest we are asked to weigh the intrusion into the driver's personal liberty occasioned not by the initial stop of the vehicle, which was admittedly justified, but by the order to get out of the car. We think this additional intrusion can only be described as de minimis. The driver is being asked to expose to view very little more of his person than is already exposed. The police have already lawfully decided that the driver shall be briefly detained; the only question is whether he shall spend that period sitting in the driver's seat of his car or standing alongside it. Not only is the insistence of the police on the latter choice not a "serious intrusion upon the sanctity of the person," but it hardly rises to the level of a "`petty indignity.'" Terry v. Ohio, supra, 392 U.S. at 17, 88 S.Ct. at 1877. What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety.
Mimms, supra, at 434 U.S. at 109, 98 S.Ct. at 333.
With respect to the case now before the court, Mimms is almost directly on point. It is clear that the initial stop of the vehicle was justified because of the traffic violation, and that the officers were within the scope of their authority in asking Michael Williams, the driver, to step out of the automobile.
In this state, however, the Mimms analysis cannot be applied with the same result to other occupants of a vehicle stopped for a traffic violation.
The Louisiana Supreme Court in State v. Williams, 366 So.2d 1369 (La.1978), expressly declined to extend the Mimms rationale to include a passenger in a car which had been stopped for a traffic offense. In Williams, New Orleans police officers stopped a vehicle travelling without tail lights in order to issue a citation, and ordered the two occupants out of the vehicle. As the passenger got out of the car, one officer noticed a sawed-off shotgun on the floor between the passenger seat and the car door.
In rejecting the application of Mimms to those facts, the Williams court questioned, first, the degree of danger in which an officer is placed when stopping a routine traffic offender, and, second, whether ordering such an offender to leave his car significantly enhances the officer's safety from either a serious offender or passing traffic. The court pointed out that although ordering the driver from a vehicle in order to protect the officer from accidental injury by passing traffic may be reasonable when the officer would otherwise have to speak to the driver through the driver's window, "it has no application when the passenger is involved. Not only is the officer less likely to be exposed to traffic if he stands outside the passenger windows on the right side of the car, there is also no need for the officer to speak to the passenger during a routine traffic stop." Williams, supra at 1374.
Most importantly, the court concluded:
[T]he treatment by the Supreme Court of the intrusion into the driver's personal *1212 liberty is not dispositive of the issue at hand. As the court noted, by stopping the automobile the police have decided that the driver will be detained. Such is not the case for the passenger, who has broken no law and who may walk away from the scene unless the police officer has some other legitimate reason to detain him. Certainly the passenger has a higher expectation of privacy than the driver, because the passenger plays no part in the routine traffic infraction and has reason to suppose that any exchange with the authorities will be conducted by the driver alone. To give the police officer the discretion to order the passenger from the automobile without requiring any explanation of the officer's actions (other than a blanket concern for personal safety in all situations) is to abandon the requirement of individualized injury into the reasons for an intrusion of the right to privacy secured by Article 1, Sect. 5 of the Louisiana Constitution. (See State v. Kinnemann, 337 So.2d 441 (La.1976). Therefore, without deciding the relationship between the Mimms analysis of the motorist's liberty interest under the Fourth Amendment and the right to privacy under Louisiana Constitution Article 1, Sect. 5, we conclude that the Mimms rationale does not extend to passengers in the automobile. There is no legitimate support in Louisiana for a rule that would permit police to remove a passenger from an automobile on a routine traffic stop. [emphasis added]
The case before this court can, however, be distinguished on its facts from Williams. At the point the deputies placed the driver under custodial arrest and placed him in the back of their police unit, the encounter ceased to be merely a "routine traffic stop", as contemplated by Williams. Rather, it escalated into a situation in which the deputies had legitimate reason to detain the passenger and question him about the status of the vehicle, whether he had a driver's license, and whether he could drive the automobile from the scene of the arrest. The officers' actions in ordering Davis from the automobile constituted only a minimal intrusion into the defendant's privacy. We find the actions of the officers were within the scope of their authority, and were reasonable under the circumstances.
Once it has been determined that the officers had a right to order the defendant from the car, there remains the second question of the propriety of the search which produced the weapon. If the testimony of the officers is accepted, the answer is controlled by Terry v. Ohio, supra, wherein the officer was held to be justified in conducting a limited search for weapons once he had reasonably concluded that the person whom he had legitimately stopped might be armed and presently dangerous. Under the standard enunciated in Terry whether "the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief that the action taken was appropriate," the officers were justified. Terry, supra, 392 U.S. at 21-22, 88 S.Ct. at 1880. The bulge which the officers stated they noticed under Davis' shirt as he exited the vehicle lead them to conclude that he was armed and thus a clear and present danger to their safety. Under the circumstances, any man of "reasonable caution" might have frisked the defendant for a weapon.
If, on the other hand, the defendant's version of the incident is believed, and the deputies in fact found the gun during a search of the automobile, the seizure of the weapon should still be upheld.
In New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the U.S. Supreme Court addressed the question of the proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of one of its occupants. The court pointed to earlier cases which had upheld the search of the area within the immediate control of an arrestee, or "the area from within which [an arrestee] might gain possession of a weapon or destructible evidence." Chimel v. California 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed. 685 *1213 (1969). The court noted, however, that that principle has been found by courts to be difficult to apply in specific cases, and stressed the importance of a set of rules which makes it possible for the police to reach a correct determination beforehand as to whether an invasion of privacy is justified in the interest of law enforcement. The court explained, "in short, `[a] single, familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.' Dunaway v. New York, 442 U.S. 200, 213-214, 99 S.Ct. 2248, 2256-57, 60 L.Ed.2d 824." Belton, supra at 2863.
In answer to the problem, the Belton court declared "[a]ccordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, [footnote omitted], he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. [footnote omitted]" Belton, supra 101 S.Ct. at 2864.
The holding of Belton states a clear-cut rule of law which would justify a search of the vehicle in the instant case. We note that the Louisiana Supreme Court has, in one case, rejected the broad holding of Belton as not being a proper rule of police conduct under our state constitution, due to its explicitly broader guarantees of individual liberty and privacy. In State v. Hernandez, 410 So.2d 1381, 1385 (La.1982), the court asserted that Belton has "no application after-an arrestee has been handcuffed and removed from the scene, foreclosing even the slightest possibility that he could reach for an article within the vehicle." [emphasis ours] The court then stated that it would adhere to what it considered a "well-settled rule" in construing the Louisiana Constitution.
[W]hen a custodial arrest is made, because of the danger that the person arrested may seek to use a weapon or that evidence may be concealed or destroyed, the arresting officer may, to safeguard himself and others and to prevent the loss of evidence, conduct a prompt, warrantless search of the arrestee's person and the area within his controlconstruing that phrase to mean the area from within which he could gain possession of a weapon or destructible evidence. [citations omitted]
Hernandez, supra at 1385.
Despite the restrictive language of Hernandez, it does not have blanket application to all Louisiana cases which deal with automobile searches incident to custodial arrests. The Louisiana Supreme Court has, both prior and subsequent to Hernandez, either generally applied or at least cited with approval Belton. See State v. Drott, 412 So.2d 984 (La.1982); State v. Melton, 412 So.2d 1065 (La.1982); State v. Hernandez, 408 So.2d 911 (La.1981); State v. Crosby, 403 So.2d 1217 (La.1981) (Lemmon, J., dissenting); State v. Square, 433 So.2d 104 (La.1983).
Additionally, the case before us can be readily distinguished from Hernandez. In Hernandez, the defendant was arrested for DWI and related traffic offenses as he parked his car in his driveway after police officers had chased him through city streets some distance. As the defendant was escorted to the patrol car to be transported to the police station, he stated he did not want anyone driving his car. Nevertheless, in accordance with alleged police policy, the officers radioed for a wrecker to tow the car. While waiting for the wrecker, one officer returned to the private property upon which the car was parked and inspected its interior. He discovered marijuana cigarettes on the console between the front seats and on the left floorboard, and seized the cigarettes as evidence.
The Hernandez court, even as it rejected Belton's broad holding, acknowledged that Belton is inopposite to their case because the search of Hernandez's car was not contemporaneous with the arrest; furthermore, the court noted that the search of defendant's car without probable cause or any circumstances which would justify an *1214 exception to the warrant requirement plainly constituted an unreasonable search and seizure.
In the instant case, we find that the totality of the circumstances justified any search as legal under an exception to the warrant requirement. The testimony is uncontradicted that after the arrest of the driver of the automobile, the passenger was unable to produce a driver's license or any identification whatsoever which would justify the deputies allowing him to drive the car away. The deputies were faced with a situation in which they had one subject under arrest and in custody, and another, visibly nervous, being detained. Neither subject had identification on his person. By Davis' own testimony, the ownership of the car was also in question. The officers at that point were in possession of sufficient facts to legitimately have formed a reasonable suspicion that a crime had been or was about to be committed. La.C.Cr.P. art. 215.1.
The standard of "reasonableness under all the circumstances of the particular governmental invasion of a citizen's personal security" is, of course, still applicable, as it is in all Fourth Amendment cases. Terry v. Ohio, supra; Schmerber v. California 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). It was, therefore, reasonable that the officers investigate the situation further by looking inside the car, either to determine its ownership and substantiate Davis' claim that the car belonged to his wife, or to confirm their suspicion that there was criminal activity afoot. Under this analysis, this invasion into Davis' privacy meets the test of reasonableness under all the circumstances. Pennsylvania v. Mimms, supra; Terry v. Ohio, supra. Hence, we conclude that the search of the vehicle, if indeed there was a search, was proper.
Accordingly, the ruling of the trial court on the motion to suppress is affirmed.
AFFIRMED.
NOTES
[1] Within appellant's brief, he again challenged the ruling on the motion to suppress, but slightly changed the focus of his argument as follows:

The Court committed reversible error when it denied defendant's motion to suppress evidence. The defendant was a passenger in a vehicle which was stopped for a routine traffic citation. The request by the police officers for the defendant to exit the vehicle was a violation of his liberty interests under the 4th Amendment and the right to privacy under the 4th Amendment and Louisiana Constitution Article 1, Section 5.
This change of focus was considered merely an expansion of the assignment designated in the record, rather than a supplemental assignment appearing for the first time in brief.