KLIEBERT, Judge.
The defendant, Matthew Wayne Morgan, pled guilty to possession of diazepam (LSA-R.S. 40:969), reserving his right under State v. Crosby, 338 So.2d 584 (La.1976), to appeal from the denial of his motion to suppress physical evidence. We affirm.
At the hearing on the motion to suppress, Deputies Gattuso and Williams testified as to the events leading to Morgan’s arrest. Deputy Gattuso said that on December 3, 1985 the Jefferson Parish Sheriff's Office received a call from a clerk at the Time Saver located at 3751 Barataría Boulevard. The clerk informed the dispatcher that a suspicious person had been *615 standing outside by the pay telephone near a blue Datsun “for a long time”.
Deputy Gattuso arrived at the scene and observed a white male and two white females sitting in a blue car parked near the pay telephone. Deputy Williams arrived in another unit seconds later. According to the deputies neither sirens nor bar lights were utilized in approaching the scene.
Because the store was robbed frequently, and it was Christmas time, when armed robberies increase, the deputies approached the car with caution, but did not draw their guns. The subjects were instructed to get out of the car; they complied without incident. As the white male, later identified as Matthew Morgan, exited the driver’s seat, he informed the deputies there was a gun under his shirt. Deputy Williams retrieved the gun, a .357 Magnum, and returned to his unit to check the serial number on the N.C.I.C. computer. Meanwhile, Deputy Gattuso did a pat-down search of Morgan for other weapons. He found a purse containing a white powder, some pills, two hyperdemic needles, and drug paraphernalia.
Deputy Williams discovered that the gun was listed as stolen. Morgan was arrested for possession of stolen property and, after subsequent analysis proved the white powder to be cocaine and the pills diazepam, was later charged with possession of narcotics. The women were released after they told the deputies they had asked Morgan for a.ride and were unaware of his possession of the gun and drugs. The store clerk verified that the women walked up to the blue car just as the deputies arrived.
However, at the motion to suppress, one of the women, Kathleen Findley, related a distinctly different series of events. She said the car was her sister’s. As the engine was sputtering, they pulled into the Time Saver to call her husband. Morgan approached on foot and asked for a ride to Marrero. The women agreed and Morgan climbed into the back seat. Suddenly, a police unit pulled up with bar lights flashing and ordered “everyone out of the car” over the public address system. Findley and her sister approached the unit and told the deputy that a friend of their’s was in the back seat. The deputy approached the car with his gun drawn and ordered Morgan to get out. Meanwhile another unit arrived at the scene, and the second deputy began to question the women.
Findley said Morgan was removed from the car by the deputies, who searched him and found the gun, drugs, and hypodermic needles. She did not hear Morgan tell the deputies he had a gun. Findley denied knowing Morgan was carrying contraband. On cross-examination she admitted to a theft conviction.
Defense counsel contends Morgan was “arrested” when the deputies approached with bar lights flashing and ordered everyone out of the car, and therefore the motion to suppress should have been granted because the deputies at that point in time lacked probable cause for arrest. The state contends the search was incident to a lawful stop and frisk, as authorized by La.C.Cr.P. Article 215.1, and that the defendant was not arrested until it was discovered the gun was listed as stolen. In the alternative, the state contends the discovery of the drugs was inevitable in that Morgan was subject to search pursuant to his arrest for possession of stolen property. We find merit in the state’s first argument and thus decline to address the second.
The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution of 1974 provide, inter alia, that every person shall be secure in his person against unreasonable searches and seizures. A search conducted without a warrant is per se unreasonable unless the state can prove it is justified under an exception to the warrant requirement. State v. Hernandez, 410 So.2d 1381 (La.1982); State v. Cathey, 493 So.2d 842 (5th Cir.1986) writ denied 500 So.2d 419. La.C.Cr.P. Article 215.1 establishes such an exception:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, *616 address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
C. If the law enforcement officer finds a dangerous weapon, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person.
The constitutional basis for the article are the principles embodied in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and its progeny.
“Reasonable suspicion” for an investigatory detention is something less than probable cause and must be determined under the facts of each case; the officer must have articulable knowledge of particular facts to reasonably suspect the detained person of criminal activity and thus to justify the infringement of the individual’s right to be free from governmental interference. State v. Williams, 421 So.2d 874 (La.1982); State v. Wiley, 507 So.2d 841 (La.App. 5th Cir.1987).
The deputies had reasonable cause to detain Morgan. He was loitering in the parking lot of a frequently robbed store, during a time of year when robberies increased, in such a manner as to alarm the clerk on duty. Asking Morgan to step out of the vehicle did not exceed the scope of a lawful stop. Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); State v. Davis, 452 So.2d 1208 (La.App. 5th Cir.1984). The fact Morgan voluntarily surrendered the gun both justified and mandated a search of his person for additional weapons; the deputies were wary of being lulled into a false sense of security. As the search was for safety reasons and incident to a lawful stop, the evidence was lawfully seized.
The foregoing analysis is based on the factual scenario as related by Deputies Gattuso and Williams. Defense counsel contends Findley’s testimony establishes that Morgan was “arrested” prior to the search of his person. The trial court obviously rejected Findley’s version of events as not credible and accepted as true the version related by the deputies. It is not the function of this court to evaluate the credibility of witnesses on a cold record and overturn the trial court on its factual determination, State v. Richardson, 425 So.2d 1228 (La.1983); State v. Green, 469 So.2d 1161 (La.App. 5th Cir.1985).
For the foregoing reasons, we affirm the trial court’s ruling on the motion to suppress. Defendant’s conviction and sentence are affirmed.
AFFIRMED.