556 So.2d 166 (1990)
STATE of Louisiana
v.
Marvin D. TOLLIVER.
No. 89-KA-585.
Court of Appeal of Louisiana, Fifth Circuit.
January 17, 1990.
*167 James C. Lawrence, New Orleans, for appellant.
John M. Mamoulides, Dist. Atty., Ronald Gracianette, Dorothy A. Pendergast, Asst. Dist. Attys. (Louise Korns, of counsel, Office of the Dist. Atty.), Gretna, for appellee.
Before CHEHARDY, GRISBAUM and DUFRESNE, JJ.
CHEHARDY, Chief Judge.
Marvin Tolliver was charged with one count of possession of five grams of crack cocaine, under LSA-R.S. 40:967. Initially he pleaded not guilty to the charge and filed a motion to suppress evidence of the seized drug on the basis that it was unlawfully obtained without a search warrant and without probable cause. After hearing the district court denied Tolliver's motion to suppress, reasoning that the cocaine was inadvertently discovered in the course of a valid investigatory stop.
Tolliver changed his plea to guilty but reserved his right to appeal the district court ruling on the motion to suppress. State v. Crosby, 338 So.2d 584 (La. 1976). After conduct of a thorough colloquy in accordance with Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the district judge accepted Tolliver's guilty plea and sentenced him to serve 18 months in the parish prison. The sentence was suspended and Tolliver was placed on active probation for two years. He was also required to satisfy a $500 fine, court costs and administrative fees. LSA-C. Cr.P. art. 895.1.
In this appeal Tolliver argues that the district court committed reversible error in denying his motion to suppress the cocaine, because the evidence was illegally seized in violation of his Fourth Amendment rights. We hold that on the evidence presented the district court correctly denied defendant's motion to suppress.

THE EVENT
The evidence introduced at the suppression hearing took the form of testimony from veteran police officers Lt. David Bujol and Sgt. Henry Saacks. On March 2, 1989 at 9:30 p.m. the officers were patroling East Jefferson in an unmarked car. As they traveled westbound toward Kenner in the left lane of Airline Highway they observed a white Buick Regal headed west in the right lane, four car lengths ahead of them. As the Buick passed a Time Saver in the 4100 block of Airline Highway, the driver, later identified as the defendant Tolliver, reduced his speed from 40 to 5 miles per hour. Lt. Bujol described the car as proceeding "at a slow pace" moving almost "to a crawl." Both Tolliver and his passenger, Reginald Harris, stared intently into the store, turning their heads completely to the right.
The Buick continued west on Airline Highway through the Clearview Parkway intersection. At the corner of Phlox Street and Airline, the car repeated the slow-down maneuver, reducing its speed to 5 miles per hour as it passed a Circle K convenience store. Both occupants of the vehicle carefully scanned the store as they drove past. The police officers' suspicions were aroused. Lt. Bujol testified that this area of Airline Highway is a high crime location due to the ease of flight from the area via Earhart Expressway. Both convenience stores had been the sites of numerous robberies. Sgt. Saacks stated that the actions of Tolliver and Harris, slowing the car and staring fixedly into the store windows, were consistent with a suspect's "casing" a potential robbery site.
Continuing toward Kenner, the Buick slowed to 5 miles per hour as it passed a Texaco service station. Tolliver and Harris stared into the station until their vehicle was well past it. Lt. Bujol was forced to speed up to relieve traffic congestion which had built up behind the two vehicles. As he did so Tolliver and Harris noticed the *168 car and Sgt. Saacks in uniform in the passenger seat. The Buick maintained a five to ten-mile-per-hour speed. Lt. Bujol was able to reduce his speed to drop behind the Buick which then moved to the left traffic lane in front of the police car. The officers requested a radio check of the vehicle license plate. It revealed that the car had not been reported stolen but was registered to Kay Tolliver.
At the David Drive intersection the Buick turned left and proceeded to Earhart Expressway. Both officers found this route highly suspicious in that a driver traveling west on Airline Highway who wanted to access Earhart Expressway could have done so at Clearview Parkway. The officers stopped the vehicle to investigate.
As the Buick stopped, defendant Tolliver got out of the car and locked the door. Harris got out of the passenger side door and moved to the rear of the vehicle. Lt. Bujol asked the men where they were going. Tolliver replied that they were going for a ride; Harris said they were looking for Tolliver's sister. A pat-down search of both men revealed no weapons.
In response to Sgt. Saacks' request, Tolliver produced his driver's license. Sgt. Saacks asked for the vehicle registration and Tolliver stated that it was in the glove compartment. Before having Tolliver retrieve the registration, Sgt. Saacks asked him if there was a gun in the car. Tolliver said that there was a gun in the front seat under the arm rest. Sgt. Saacks asked Tolliver if the officers could take possession of the gun and he agreed. Lt. Bujol entered the passenger side of the vehicle. He observed a .38 revolver partially sticking out from beneath the arm rest. He lifted the arm rest and picked up the hand gun. Beneath the gun he saw an open black coin purse. Inside the purse he saw a clear plastic bag containing a white rock-like substance which he recognized as crack cocaine. Lt. Bujol secured the hand gun, seized the purse and placed Tolliver and Harris under arrest.

THE ANALYSIS
In denying Tolliver's motion to suppress, the district court found that the investigatory stop was reasonable. The entry into the car to remove the weapon was justified and the contraband was in plain view when seized. Tolliver challenges these findings on appeal.

I
The Constitution of the United States forbids unreasonable searches and seizures. U.S. Const.Amend. 4. The Louisiana Constitution extends this protection to prohibit the invasion of an individual's privacy. La. Const. 1974, Art. 1 § 5. When, as in this case, the seizure occurs in the absence of a warrant, the unreasonableness of the search must be proved by the State. We find that here the State has borne its burden of proof.
We do not suscribe to defendant's contentions in brief that the initial stop was invasive, and that therefore the search for the gun unjustified and the seizure of the cocaine illegal. The officers' initial approach was not a routine traffic stop and this appeal is not governed by Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), and its progeny. See, e.g., State v. Church, 538 So.2d 993 (La. 1989). Rather we find this case governed by both the facts and analysis of Terry v. State of Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the classic "stop and frisk" case.
In Terry a veteran police officer observed two men repeatedly passing and staring into a store window for 10 to 12 minutes. He approached the men, identified himself and asked for their names. Incident to this investigatory stop the officer conducted a frisk  a pat-down search of the men for weapons. The frisk, which revealed that the men were carrying concealed weapons, resulted in their arrest and generated the court suit. The district and appellate court denied the motion to suppress the guns; the Supreme Court affirmed. The court reasoned that a citizen's constitutional right to personal security must be weighed against the government's *169 obligation of crime prevention and detection. Any invasion of privacy, however minimal, must be reasonable. To determine if the interference in this instance was justified, the court examined (1) whether the police officer's action was justified at its inception; and (2) whether the action was reasonably related in scope to the circumstances which justified the interference in the first place. The majority found that to justify the intrusion the officer must be able to point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 88 S.Ct. at 1880. It held that the officer who observed conduct consistent with the hypothesis of a potential robbery acted reasonably in stopping the men for questioning, and that the incident pat-down search for weapons was justified.
The "reasonable suspicion" to stop test of Terry has been codified in Louisiana at LSA-C.Cr.P. art. 215.1:
"A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of actions.
"B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
"C. If the law enforcement officer finds a dangerous weapon, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person."
In this case the conduct of Officers Bujol and Saacks agrees with both case and code law. Lt. Bujol, a five-year police officer, and Sgt. Saacks, a four-year veteran of the Task Force, observed Tolliver and Harris for five to eight minutes. Their repeated reconnaissance of the convenience stores and service station was suspicious. Lt. Bujol testified that their actions fit the profile of a potential armed robbery. The officers were justified in investigating; indeed they would have been remiss in their duties if they had not.
We are not persuaded by Tolliver's argument at the motion to suppress, that his actions were consistent with reading advertisements in store windows or pricing gasoline. He participated in "a series of acts, each of them perhaps innocent in itself, but which taken together warranted further investigation." Terry, 88 S.Ct. at 1880-1881. Analyzed under the objective standard, at the moment of the initial intrusion, Officers Bujol and Saacks possessed a reasonable suspicion that criminal activity was imminent. They were entitled to stop Tolliver and Harris and ascertain their identities and an explanation of their actions. The investigatory stop, based on reasonable suspicion, did not violate Tolliver's constitutional rights.

II
When a police officer observes conduct which leads him to reasonably conclude that criminal activity may be afoot and that the persons with whom he is dealing may be armed and dangerous, he is, in the course of the investigatory stop, entitled for the protection of himself and others to conduct a carefully limited search to discover weapons which might be used to assault him. Terry, 88 S.Ct. at 1884-1885. This commonly called frisk or pat-down search allows the officers to neutralize a potential conflict prior to the crisis stage. State v. Wade, 390 So.2d 1309 (La.1980); LSA-C.Cr.P. art. 215.1(B). Primarily as a safety measure, to prevent harm to the investigating officer, the person stopped and other members of the public, the limited search for weapons has in certain situations been extended beyond the person stopped and into his car. State v. Reed, 388 So.2d 776 (La.1980); State v. Zilton, 516 So.2d 178 (La.App. 4 Cir.1987).
We acknowledge that here the hand gun was not plainly visible to the officers at the time of the initial stop. The above-cited *170 cases nevertheless support our belief that, within the boundaries of both Terry and LSA-C.Cr.P. art. 215.1, the officers' inquiry into the existence and location of the gun in the car was reasonable. The stop occurred after dark on a sparsely traveled portion of Earhart Expressway. Neither Tolliver nor Harris could satisfactorily explain their activities. Although Tolliver produced a valid driver's license, Lt. Bujol testified that he asked for the vehicle registration to verify the Buick's ownership. When Tolliver replied that the registration was in the glove compartment the officers asked Tolliver if there was a gun in the car. Lt. Bujol testified that for safety reasons the officers wanted to locate and retrieve the gun before allowing Tolliver to produce the vehicle registration. What occurred was not a full-blown vehicle search. The testimony indicates that Lt. Bujol entered the Buick and secured the gun without exploration. Without more we could find that a limited and temporary justifiable intrusion occurred. LSA-C.Cr.P. art. 215.1(C).
However, in this scenario, the additional element of Tolliver's consent supports the search. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Both officers testified that upon learning of the presence of the gun under the front seat arm rest, they asked Tolliver if they could enter the vehicle and retrieve it. Tolliver agreed, he gave his permission for Lt. Bujol to take possession of the hand gun. There is no suggestion that Tolliver's consent was not freely given. Under these facts the search and seizure of the hand gun was neither unreasonable nor unconstitutional. State v. Tennant, 352 So.2d 629 (La.1977); State v. Diaz, 461 So.2d 1099 (La.App. 5 Cir. 1984).

III
We disagree with defendant Tolliver's contention that the crack cocaine was illegally seized because the investigatory stop was unreasonable. Search and seizure of evidence without a warrant is permissible when the evidence is in plain view and (1) there is prior justification for police intrusion into the protected area; (2) the evidence is discovered inadvertently; (3) it is immediately apparent, without close inspection, that the items are evidence or contraband. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); State v. Pomes, 376 So.2d 133 (La. 1979). In this case Officers Bujol and Saacks acted reasonably in initiating the investigatory stop; they had a right to be where they were. The cocaine was discovered by Lt. Bujol accidently, while he was retrieving the hand gun. At the motion to suppress the lieutenant testified that he immediately recognized the white rock-like substance, clearly visible in the coin purse as crack cocaine. Upon observing the drug Lt. Bujol, based on his training and experience, had probable cause to believe that the item contained in the vehicle was contraband and to associate its presence with criminal activity. State v. Cardenas, 464 So.2d 808 (La.App. 5 Cir.1985). A degree of exigency was also present. Had the officers delayed to obtain a warrant, the car and its contents could have disappeared. The contemporaneous seizure of the drug was therefore justified. State v. Duperon, 448 So.2d 720 (La.App. 5 Cir. 1984).

THE RESULT
In sum we find that the district court judgment denying Tolliver's motion to suppress the cocaine was correct. Tolliver and Harris were stopped for questioning based on the articulated suspicion that they were involved in criminal activity. The retrieval of the hand gun was undertaken for safety reasons. The crack was lawfully seized. State v. Morgan, 540 So.2d 614 (La.App. 5 Cir. 1989). The search and seizure did not violate any rights afforded to Tolliver by either the United States or the Louisiana Constitutions.
Our appellate review reveals the presence of patent error in Tolliver's sentence. LSA-C.Cr.P. art. 880 requires that the defendant receive credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. Neither the sentencing transcript, the minute entry nor the commitment reflects such a *171 credit. This error does not mandate reversal but is correctable in this appeal.
For the foregoing reasons, Marvin Tolliver's conviction is affirmed. The sentence is amended to reflect that defendant is to be given credit for time served to the date of imposition of sentence. As amended, the sentence is affirmed.
CONVICTION AFFIRMED; SENTENCE AMENDED AND, AS AMENDED, AFFIRMED.