GOTHARD, Judge.
The defendant, Ray A. Barre, appeals denial of his motion to suppress the evidence, filed in defense against a charge of possession of cocaine.
On September 26, 1990, the defendant was charged by bill of information with possession of cocaine in violation of LSA-R.S. 40:967. The trial judge denied defendant’s motion to suppress on March 13, *442 1990, having held a hearing and requested briefs from both sides.
Defendant subsequently withdrew his earlier plea of not guilty and, after being advised of his rights, entered a plea of guilty to possession of cocaine. Defendant’s plea was entered pursuant to State v. Crosby, 338 So.2d 584 (La.1976), thereby reserving his right to appeal the denial of his motion to suppress.
Following a pre-sentence investigation, defendant was sentenced on May 2, 1991, to three years at hard labor. Execution of the sentence was suspended and defendant was placed on three years active probation with the special condition that he serve one year in parish prison. The court allowed defendant to keep his job, with the understanding that he report to jail each day immediately after work. This appeal followed.
Testimony at the suppression hearing revealed the following facts. On September 8, 1990, at approximately 2:10 a.m., four officers (Detective Breedy, Deputy Dominick, Sergeant Simoneaux, and Corporal Pet-it) of the St. Charles Parish Sheriffs Office, Narcotics Division, were patrolling a high crime area in Hahnville pursuant to a task force detail. The purpose of the task force was to concentrate police patrols in high crime areas, namely in areas of violent crime and drug dealings, with the intent of suppressing the crime.
While patrolling the area of Morgan Street in Hahnville, the four officers, travelling in two marked police units, observed a vehicle parked in a shell area directly across from what was known at one time as the Purple Rain Bar. The officers observed defendant in the driver’s seat speaking through the open window to a man later identified as Lyle Gros. As the marked units approached, Gros began to walk away in the opposite direction. Because of the lateness of the hour and the high crime nature of the area, the officers felt that further investigation was warranted.
Sergeant Simoneaux and Corporal Petit, who were in the lead police unit, approached Gros, while the second unit containing Detective Breedy and Deputy Dominick pulled alongside defendant’s vehicle. At that point defendant exited his vehicle, closed the door, and proceeded to stand outside the vehicle by the front fender. As Deputy Dominick questioned ' defendant, Detective Breedy shined a flashlight into the vehicle through the driver side window, which was rolled down. On the floorboard of the vehicle in plain view the officer spotted a steak knife with a blade of approximately seven inches.
Detective Breedy then opened the vehicle door in order to secure the weapon for safety reasons. As he reached down to retrieve the weapon, he observed, immediately next to the knife, a red plastic tray which contained a small plastic wrapping with a powdery residue. Based on his experience, Detective Breedy believed that the powdery residue was cocaine. Feeling further investigation was warranted, he took custody of this plastic parcel. As the officer pushed up on the seat to leave the vehicle, he observed a second plastic parcel which contained an off-white rock-like substance consistent in appearance with crack cocaine.
Breedy took possession of this second parcel, exited the vehicle and informed defendant of his findings. A field test was then conducted by Sergeant Oubre on the rock-like substance, which proved positive for the presence of cocaine. After a field test, Detective Breedy immediately advised defendant of his rights and placed him under arrest.

Assignment of Error

The defendant’s appeal is limited to one assignment of error: The trial court erred in not suppressing the evidence that was seized by police officers in the search of defendant’s vehicle.
Defendant argues that the arresting officer had no specific and articulable facts to suspect him of any possible criminal activity, and therefore, the officers were not justified in stopping defendant pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). All evidence seized from defendant without a warrant was the *443 fruit of an illegal detention, and therefore, the motion to suppress should have been granted.
In U.S. v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), the Supreme Court discussed the Terry type investigatory stop and the standard to be used in establishing the existence of reasonable suspicion. In Sokolow, 109 S.Ct. at 1585, the Supreme Court stated:
In Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884-85, 20 L.Ed.2d 889 (1968), we held that the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity “may be afoot,” even if the officer lacks probable cause.
The officer, of course, must be able to articulate something more than an “inchoate and unparticularized suspicion or ‘hunch’.” Id., at 27, 88 S.Ct. at 1883. The Fourth Amendment requires “some minimal level of objective justification” for making the stop. INS v. Delgado, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984). That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means “a fair probability that contraband or evidence of a crime will be found,” Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), and the level of suspicion required for a Terry stop is obviously less demanding than that for probable cause. See United States v. Montoya de Hernandez, 473 U.S. 531, 541, 544, 105 S.Ct. 3304, 3312, 87 L.Ed.2d 381 (1985).
The concept of reasonable suspicion, like probable cause, is not “readily, or even usefully, reduced to a neat set of legal rules.” Gates, supra, 462 U.S., at 232,103 S.Ct., at 2329_ In evaluating the validity of a stop such as this, we must consider “the totality of the circumstances — the whole picture.” United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)....
In State v. Davis, 547 So.2d 1367, 1375 (La.App. 5th Cir.1989), writ denied, 556 So.2d 53 (La.1990), this Court discussed Sokolow, stating as follows:
A fair reading of the Sokolow opinion indicates that the specific and articulable facts to which a law enforcement officer must be able to point in justifying an investigatory stop are to be evaluated in light of all circumstances surrounding the particular incident. A court’s inquiry into the existence of reasonable suspicion should entail practical consideration of the cumulative effect of all facts articulated by the officer, further taking into account the probative value of such facts to the trained law enforcement official observing them. Any attempt to refine this “totality of the circumstances” standard for reasonable suspicion is invalid.
In the present case, the initial contact between the defendant and the police officers can be deemed voluntary. As soon as the officers pulled their vehicle alongside defendant’s, defendant exited his vehicle and walked to the front fender. The officers did not ask defendant to leave his vehicle nor did they, in any way, suggest that he do so. The testimony, at this point, indicates that the officers approached defendant merely to converse with him and ascertain the purpose of his actions. Defendant probably would have been allowed to walk away from the encounter had Detective Breedy not observed the knife in plain view on the floorboard of defendant’s vehicle, a brief time after the detectives approached him.
At the point that Detective Breedy saw the knife, it appears that the initial voluntary encounter between defendant and the officers was transformed into more of an investigatory type stop within the meaning of Terry v. Ohio, supra and LSA-C.Cr.P. art. 215.1.[1]
*444 When asked at the suppression hearing why he approached Barre’s vehicle, Detective Breedy responded:
... The two individuals were in an area that is known, and documented as a high crime area, violent crime, also known and documented as where a consistent amount of drug dealing, or a relatively high amount of drug dealing does occur. It's a short distance from the Hahnville Projects. It was a late hour. It was in a somewhat secluded area, though I did testify earlier, that there was a street light relatively close. It was dark. It was night. Our purpose was to investigate their purpose for being there. Who they were, and what their purpose for being there was. And to document such, as is common with the Task Force, field interview cards are normally filled out.
The circumstances of this investigative stop are similar to those of an earlier ease decided by this court, State v. Wright, 562 So.2d 1192 (La.App. 5th Cir.1990). In that case the court concluded that the officer had reasonable suspicion to justify a Terry stop because the defendant was standing around in a known drug area at night, looked nervous, and attempted to walk away from the police. The stop was made during a patrol of drug areas by a special task force of the Jefferson Parish Sheriffs Office.
In the case before us, the situation as described by Detective Breedy and the discovery of the knife are circumstances sufficient to cause a trained police officer to have a reasonable suspicion that defendant was engaged in or about to become engaged in criminal activity. Consequently, we find that the investigatory stop was legal. See State v. Tolliver, 556 So.2d 166 (La.App. 5th Cir.1990).
We next consider whether Detective Breedy was justified in entering the vehicle to secure the knife and to check it for other weapons and/or contraband.
In Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the United States Supreme Court expanded Terry to allow a police officer to conduct a protective search of the automobile from which defendant was pulled recognizing that roadside encounters may be especially hazardous to police. In Michigan v. Long, 103 S.Ct. at 3480, the U.S. Supreme Court reasoned as follows:
Our past cases indicate then that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on ‘specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant’ the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. See Terry, 392 U.S., at 21, 88 S.Ct., at 1880....
Based on the foregoing discussion, and recognizing the potential danger of roadside encounters, Detective Breedy was justified in entering the vehicle and conducting a search limited to those areas in which a weapon could be placed or hidden. Once Detective Breedy lawfully entered the vehicle pursuant to Terry and the jurisprudence resulting therefrom, he observed the cocaine in plain view.
*445 Lastly, we find that Detective Breedy was justified in seizing the cocaine without a warrant. After seeing the cocaine in plain view he was entitled to seize the items under the automobile exception to the Fourth Amendment’s search warrant. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).
Two requirements must be satisfied before a warrantless seizure of evidence within a movable vehicle is authorized under the automobile exception: (1) there must be probable cause to believe the vehicle contains contraband or evidence of a crime; and (2) there must be exigent circumstances requiring an immediate war-rantless search. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), rehearing denied, 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94 (1970); State v. Wright, supra. Here, the officer discovered the plastic wrappings containing substances ultimately found to be crack cocaine during a check of the car for weapons. Finding the weapon and spotting the plastic wrappings gave him probable cause to believe the vehicle contained contraband.
The second requirement, “exigent circumstances” exist when it is impracticable to obtain a warrant because during the delay the car may be moved, the occupants are alerted, and the contents may never be found again. State v. Chaney, 423 So.2d 1092 (La.1982). Such circumstances existed in the situation before us.
For the reasons discussed, we find that the investigatory stop, seizure of the knife and cocaine, and the arrest of defendant were justified.
Our error patent review indicates that defendant was properly boykinized before entering his plea of guilty. The court questioned him thoroughly on his understanding of the rights he would give up if he pled guilty, specifically the three rights emphasized in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969): the privilege against self-incrimination, the right to a trial by jury, and the right to confront one’s accusers.
We note that the judge in pronouncing sentence failed to give defendant credit for time served, as required by LSA-C.Cr.P. art. 880, which reads:
The court, when it imposes sentence, shall give a defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence.
As article 880 is mandatory, we must remand the case to the trial court for correction of the sentence.
For the reasons assigned above, the conviction is affirmed and the case remanded with instructions to the trial judge to correct the sentence to grant credit for time actually spent in custody.
CONVICTION AFFIRMED, CASE REMANDED WITH INSTRUCTIONS.

. Art. 215.1 reads as follows:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
*444 B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
C. If the law enforcement officer finds a dangerous weapon, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person.