410 So.2d 1381 (1982)
STATE of Louisiana
v.
Michael HERNANDEZ.
No. 81-KA-2044.
Supreme Court of Louisiana.
March 1, 1982.
Rehearing Denied April 5, 1982.
*1382 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Aubert D. Talbot, Dist. Atty., Abbott J. Reeves, Ralph Tureau, Asst. Dist. Attys., for plaintiff-appellee.
*1383 Michael J. Matthews, Gonzales, for defendant-appellant.
DENNIS, Justice.[*]
As he alighted from his car parked in the driveway of his house, defendant, Michael Hernandez, was arrested for DWI and reckless operation of a motor vehicle by two police officers. The arresting officers had given chase after noticing defendant's reckless operation and dangerous speed through the city of Gonzales. A third officer, Sam Pasqua, who had been summoned by radio, arrived just as his two colleagues were departing with the defendant in their patrol car. Defendant's parting words to Pasqua were that he did not want anyone to drive his car. Nevertheless, in accordance with what the officers said was their policy, a wrecker was ordered by radio to tow the car away. While he was waiting for the tow truck Pasqua went back onto the private property upon which the car was parked and inspected its interior, including the glove compartment. He discovered in open view two marijuana cigarettes and surgical forceps on the console between the two front seats and another marijuana cigarette on the left floorboard. Pasqua seized these items as evidence.
Before trial defendant moved unsuccessfully to suppress the marijuana seized from his car. After a judge trial on multiple charges, defendant, Michael Hernandez, was convicted of reckless operation of a vehicle, La.R.S. 14:99, driving while intoxicated, La.R.S. 14:98, and possession of marijuana, La.R.S. 40:966. He was sentenced to fines amounting to a total of $750, and subjected to a total of nine and one-half months in jail in default of payment. Defendant appealed and assigns as error the trial court's refusal to grant his motion to suppress.

1.
A search and seizure conducted without a warrant is presumed unreasonable unless it is justified by one of the narrowly drawn exceptions to the warrant requirement. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1974); State v. Banks, 363 So.2d 491 (La. 1978); State v. Fearn, 345 So.2d 468 (La. 1977). Once a defendant makes an initial showing that a warrantless search occurred, the burden of proof shifts to the state to affirmatively show that the search is justified under one of the narrow exceptions to the rule requiring a search warrant. State v. Banks, supra; State v. Franklin, 353 So.2d 1315 (La.1978).
It is undisputed that the search was not authorized by a warrant. The state contends, however, that the officer's conduct was justified and came within the "plain view" exception. In order for a warrantless seizure to come under the plain view rule, three conditions must be satisfied: (1) there must be a prior justification for an intrusion into a protected area; (2) in the course of which evidence is inadvertently discovered; and (3) where it is immediately apparent without close inspection that the items are evidence or contraband. State v. Gibson, 391 So.2d 421 (La.1980). State v. Banks, supra; State v. Parker, 355 So.2d 900 (La.1978).
The state clearly failed to carry its burden of proving that the officer who conducted the search had a prior justification for his intrusion into a protected area. There was no showing that officer Pasqua had justification for entering defendant's private property and approaching defendant's car after defendant's full custodial arrest and removal from the scene. The record indicates that defendant parked and exited from his vehicle in a driveway on private property before the police arrived. Immediately thereafter, the officers drove up, arrested the defendant, searched him, and removed him from the scene in handcuffs. Well after his fellow officers had departed with defendant in custody, Pasqua reentered the property and conducted a *1384 search of the automobile. Consequently, when Pasqua seized the items of evidence from the automobile he lacked one of the essential underpinnings for a plain view seizure, namely, justification for an intrusion into a protected area, State v. Banks, supra.
Nevertheless, the state contends that Officer Pasqua was justified in reentering the property and inspecting the car in preparation for towing it to the stationhouse. There is nothing in the record, however, which indicates that it was necessary to impound the vehicle. The defendant informed the officers that the vehicle was parked in front of his residence, and instructed them not to drive it. The vehicle was not on a public highway and posed no danger of either obstructing traffic or causing accidents. If a person is arrested in or at his place of residence and his car is parked in the garage or lot or other place where that person ordinarily leaves his car, then the police cannot justify seizure of the car on the ground that such action is needed for the protection of the vehicle and its contents. See People v. Siegel, 95 Mich. App. 594, 291 N.W.2d 134 (1980); State v. Simpson, 95 Wash.2d 170, 622 P.2d 1199 (1980); United States v. Squires, 456 F.2d 967 (2d Cir. 1972); State v. McCranie, 137 Ga.App. 369, 223 S.E.2d 765 (1976); W. La-Fave, Search and Seizure, § 7.3 at n. 51 (1978 and Supp.). Accordingly, Officer Pasqua's re-entry upon defendant's private property cannot be justified on the basis of preparing the vehicle for impoundment. State v. Banks, supra; State v. Jewell, 338 So.2d 633 (La.1976).[1]
In the recent case of New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the United States Supreme Court held that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile, including the contents of any containers from within the passenger compartment. A bare majority of the closely divided (5-4) court reasoned that: "the protection of the Fourth and Fourteenth Amendments `can only be realized if the police are acting under a set of rules which, in most instances, makes it possible to reach a correct determination beforehand as to whether an invasion of privacy is justified in the interest of law enforcement,'" 101 S.Ct. at 2863; "no straighforward rule has emerged from the cases respecting the question involved here," 101 S.Ct. at 2863, which has caused the courts difficulty and placed appellate cases in disarray; former cases suggest "that articles within the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within `the area into which an arrestee might reach in order to grab a weapon or evidentiary item,'" 101 S.Ct. at 2864; and thus the workable rule required by this category of cases is best achieved by holding that a policeman may, as a contemporaneous incident of a lawful custodial arrest of an occupant of an automobile, search the passenger compartment of the automobile and the contents of any containers found within the passenger compartment. See W. LaFave, supra, § 7.1 p. 133 (1982 Supp.)
Belton is inapposite to the present case. Officer Pasqua did not search the automobile "as a contemporaneous incident of [defendant's] arrest." Pasqua did not commence his search until well after the defendant had been arrested, handcuffed and taken to the police station. Although Belton was justified by a majority of the *1385 high court on the proposition that it is often advantageous to both privacy interests and law enforcement interests if rules of police conduct are stated in terms of easily understood standardized procedures which may be routinely followed, it is clear that the holding must bear some reasonable relation to Fourth Amendment principles if it is to survive.[2] The only rational basis for the Belton rule seems to be the notion that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within the area into which an arrestee might search in order to grab a weapon or evidentiary item. Thus, the Belton rule can have no application after an arrestee has been handcuffed and removed from the scene, foreclosing even the slightest possibility that he could reach for an article within the vehicle.
Furthermore, the search of the defendant's automobile, without probable cause, and in the absence of any of the circumstances which have been recognized by this court as justifying a narrow exception to the warrant requirement, plainly constituted an unreasonable search, seizure or invasion of privacy in violation of Article 1, § 5 of the 1974 Louisiana Constitution. Although the Belton case is distinguishable and therefore inapplicable here, it should be noted that we do not consider it to be a correct rule of police conduct under our state constitution. We, of course, give careful consideration to the United States Supreme Court interpretations of relevant provisions of the federal constitution, but we cannot and should not allow those decisions to replace our independent judgment in construing the constitution adopted by the people of Louisiana. See La.Const. of 1974, Preamble; Art. 1, § 1. Our state constitution's declaration of the right to privacy contains an affirmative establishment of a right of privacy, explicit protections against unreasonable searches, seizures or invasions of property and communications, as well as houses, papers and effects, and gives standing to any person adversely affected by a violation of these safeguards to raise the illegality in the courts. La.Const. 1974, Art. 1, § 5. This constitutional declaration of right is not a duplicate of the Fourth Amendment or merely coextensive with it; it is one of the most conspicuous instances in which our citizens have chosen a higher standard of individual liberty than that afforded by the jurisprudence interpreting the federal constitution. See State v. Abram, 353 So.2d 1019 (La.1978); State v. Hutchinson, 349 So.2d 1252 (La.1977); State v. Overton, 337 So.2d 1201 (La.1976); Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L.Rev. 1 (1974); Jenkins, The Declaration of Rights, 21 Loy.L.Rev. 27 (1975). For these reasons we adhere to our well-settled rule in construing our state constitution: when a custodial arrest is made, because of the danger that the person arrested may seek to use a weapon or that evidence may be concealed or destroyed, the arresting officer may, to safeguard himself and others and to prevent the loss of evidence, conduct a prompt, warrantless search of the arrestee's person and the area within his controlconstruing that phrase to mean the area from within which he could gain possession of a weapon or destructible evidence. State v. Williams, *1386 398 So.2d 1112 (La.1981); State v. Frisch, 393 So.2d 1220 (La.1981); State v. Tomasetti, 381 So.2d 420 (La.1980); State v. Blanchard, 374 So.2d 1248 (La.1979); State v. Marrero, 363 So.2d 494 (La.1978); State v. Doucet, 359 So.2d 1239 (La.1978).
The warrantless seizure of evidence from defendant's car violated his rights under the Fourth Amendment and those afforded by Article 1, § 5 of the Louisiana Constitution of 1974. The defendant's conviction and sentence for possession of marijuana must be reversed.

2.
We have reviewed defendant's assignments of error relating to his convictions of DWI and reckless operation of a motor vehicle. Finding no reversible error, those convictions are affirmed.
Assignment of Error Number 3, by which defendant contends that the trial court erred in admitting into evidence the results of the photoelectric intoximeter test, is without merit. Defendant made no contemporaneous objection to the admissibility of the test results; therefore, any error cannot be availed of after verdict. La.C. Cr.P. art. 841. Moreover, the record does not reflect that the test was conducted improperly or that the machine was improperly purged. Assignment of error number 4, objecting to the amendment of the affidavit to reflect the date of the DWI offense, is without merit. The date of the offense is not essential to the offense of DWI in this case. Therefore, an incorrect statement of the date of the offense in the affidavit shall not invalidate the affidavit, La.C.Cr.P. art. 468, and comments (b), (c), and is a defect of form which may be amended at any time. La.C.Cr.P. art. 487; State v. Dye, 384 So.2d 420 (La.1980). Moreover, defendant made no motion for a recess, nor does he contend that he was either surprised or prejudiced by the error or amendment. Assignment of error number 5, complaining that the introduction into evidence of a computer printout form from the Louisiana Department of Public Safety showing the registration and ownership of defendant's vehicle was error because it was hearsay, is also without merit. Even if erroneous, the introduction of registration and ownership of the vehicle was not in any way prejudicial to a defense to the charges of DWI or reckless operation of a motor vehicle in this case.
Defendant's possession of marijuana conviction and sentence are reversed. His DWI and reckless driving convictions and sentences are affirmed. The case is remanded.
REVERSED IN PART; AFFIRMED IN PART; REMANDED.
CARTER, J. Ad Hoc, dissents.
LEMMON and BLANCHE, JJ., dissent and assign reasons.
LEMMON, Justice, dissenting.
I disagree that the warrantless seizure of the marijuana observed inadvertently in defendant's car and the subsequent search and seizure of other marijuana was unreasonable under the circumstances of this case.
When Officers Tullier and Wolfe approached a traffic light, they saw defendant pull off at a high rate of speed and drive in an erratic manner characteristic of alcohol or drug intoxication. They pursued him through the City of Gonzales in a high speed chase, during which defendant ran into the ditch on several occasions. Finally, defendant turned off the street into a driveway and stopped his car. When the officers pulled into the driveway, defendant was still in his car. The officers approached defendant as he exited the car, arrested him, and searched him for weapons.[1] While the officers were in the process *1387 of arresting defendant, Officer Pasqua also came onto the scene.
Defendant's car was partially on and partially off the driveway, which led to a building characterized by the police as a "duplex housing project". There were several other cars parked in the back alongside the building. Although defendant claimed to live in the building, his driver's license showed an Alabama address. Since defendant had acted suspiciously at the initial appearance of the police car, and since the officers did not know defendant and did not know who resided in the building, the officers decided to take the automobile to the police station. When defendant refused to let any of the officers drive the car, Officer Tullier called a wrecker. He and Officer Wolfe took defendant to the station, while Officer Pasqua waited for the wrecker.
After the other officers left with defendant, Officer Pasqua walked up to defendant's car to check the inspection sticker and to determine if the ignition key was in the vehicle. As he approached the car, he noted that the domelight was on, because the door had been left open, and on the console of the car he observed (without the use of his flashlight) a pair of surgical forceps pinching a handrolled cigarette. He immediately recognized this as a marijuana cigarette, and he pulled his flashlight and searched the remainder of the car for additional contraband, finding two additional cigarettes.
Under the circumstances presented, I cannot say that the trial judge abused his discretion in determining that the officers' decision to impound the car was reasonable. See State v. Jewell, 338 So.2d 633 (La. 1976). Having observed defendant take off at a high rate of speed when their police car initially approached him, and having seen him attempt to elude their pursuit, they were justifiably suspicious of his actions. Furthermore, defendant's driver's license listed an Alabama address, and the area was one of apartment rental to transients. The officers acted reasonably, not only to protect the automobile itself (if it belonged to defendant), but also to assure that the automobile was not stolen.
Once the officers reasonably decided to impound the automobile and called a wrecker for that purpose, Officer Pasqua was in a position where he had a right to be, attending the automobile until the wrecker came. In this position he inadvertently observed what was immediately recognizable as contraband, and he seized the marijuana cigarette and forceps. See Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1977). His decision to proceed then to search the remainder of the automobile compartment and to seize the other marijuana cigarettes was also reasonable. The automobile was parked in a location accessible to the public, and probable cause existed to believe other contraband could be found. Therefore, an immediate search without a warrant was no greater intrusion than seizing and holding the car until probable cause was presented to a magistrate. See Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); State v. Lewis, 378 So.2d 396 (La.1979).
The evidence was validly obtained, and the conviction should have been affirmed.
BLANCHE, Justice (dissenting).
I respectfully dissent for reasons assigned by Lemmon, J., and further dissent from the discussion of Belton in the majority opinion as the same is purely dicta. It was neither briefed nor argued in connection with the warrantless search of the defendant's vehicle. Whether the Louisiana Constitution is broader than the United States Constitution relative to Fourth Amendment principles is a question that this writer has not considered, as that issue is also non-existent in this case. However, if the Louisiana is, in fact, broader than the United States Constitution on that issue, this writer feels that the Constitution is due for an amendatory change in the opposite direction.
NOTES
[*] The Honorables Melvin A. Shortess, Felix H. Savoie, Jr. and Burrell J. Carter of the Court of Appeal, First Circuit, participated in this decision as Associate Justice pro tempore, joined by Associate Justices Dennis, Blanche, Watson and Lemmon.
[1] Although not raised by the state, this is not a case in which the "automobile exception" to the warrant requirement is applicable. Probable cause to search the auto or to seize it as evidence did not exist before Officer Pasqua made his unlawful intrusion onto the property and began to search the automobile. Moreover, even if probable cause had existed there were no circumstances which justified the officer's failure to obtain a search warrant. The automobile was parked on private property in a driveway in front of the defendant's house. As in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1974), only an unlikely stretch of the legal imagination could make this case into one where it was not practicable to secure a warrant. See State v. Lewis, 378 So.2d 396 (La. 1979).
[2] The Belton rule has been incisively criticized as creating the risk that police will make custodial arrests which they otherwise would not make as a cover for a search which the Fourth Amendment otherwise prohibits. Robbins v. California, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981) (Stevens, J., dissenting). W. LaFave, supra, p. 140 (1982 Supp). Professor LaFave suggests that Belton will be shortlived:

"On balance, then, there is good reason to be critical of the Court's work in Belton. How long it will survive, and in what form, remains to be seen. The author of Belton has retired, and the continuing members of the Court are equally divided on the question discussed here. Perhaps more important, however, is the fact that the Court in Belton appears to have been influenced by other, related problems as to which it could not reach a consensus in the companion case of Robbins v. [California, supra]. Should those problems later be resolved, the search incident to arrest situation will look quite different than it appeared to the Belton majority, in which event the rule of that case may well be abandoned."
[1] The officers at this point clearly could have searched the passenger compartment of defendant's automobile for weapons or contraband. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). However, because the evidence was seized validly on other grounds, it is not necessary to decide whether there is a "handcuffed and removed" exception to the "bright line" rule announced in Belton.