LeBLANC, Judge.
Defendant, Jimmy L. Dyson, was charged by bill of information with D.W.I., second offense, a violation of Baton Rouge City Ordinance 11:140. He filed a motion to suppress, which was denied by the court following a hearing. Defendant was then tried in a bench trial and convicted as charged. He was sentenced to one hundred eighty days in jail and a five hundred *1298 dollar fine. The jail time was suspended, and defendant was placed on supervised probation for one year. Defendant’s writ application to this court was denied. Thereafter, the Louisiana Supreme Court granted certiorari and remanded the matter to this Court for briefing, argument, and opinion on the D.W.I. roadblock issue in light of State v. Parms, 523 So.2d 1293 (La.1988), which was rendered after the previous writ denial by this Court in the present case. City of Baton Rouge v. Dyson, 526 So.2d 808 (La.1988).
FACTS
Testimony from the suppression hearing reveals that on October 31,1985, the Baton Rouge City Police Department established D.W.I. roadblocks at four specified locations. .Defendant passed through the Highland Road checkpoint, located about two blocks south of the Louisiana State University campus. He was stopped by city officers Chris Calbert and Dwayne Bo-via, who were working as a team.
Calbert testified that he approached defendant’s van and asked him for his driver’s license and his vehicle registration. Defendant provided them without fumbling. Upon returning defendant’s license, Calbert detected “a faint whiff of alcohol or something that is consistent with an odor of alcohol.” Calbert then asked defendant if he had been drinking, and defendant replied that he had. While shining his flashlight into the van, Calbert observed a half full container of beer on the dashboard. Thereafter, Bovia asked defendant if he was aware of the open container law, and defendant stated that he was not. The officer then asked defendant to step out of his van. Since they had little D.W.I. experience, the officers requested Officer Kenny Holmes to assist them. Holmes spoke briefly with defendant and then began to conduct the horizontal eye gaze nystagmus test and other field sobriety tests.
Officer Holmes testified that he was on duty that night essentially to operate the D.W.I. breath van. He noted that defendant’s eyes jerked, bounced, and shook during the eye gaze nystagmus test. Based upon the eye test and defendant’s performance on the other field sobriety tests, Holmes decided to administer a breath test. Defendant was taken to the D.W.I. van, located at the roadblock site, where he was given his rights. Another field sobriety test, which was videotaped, was conducted inside the van. The p.e.i. test administered resulted in a sample reading of .11 percent alcohol by weight.
At the hearing on the motion to suppress, the state presented the testimony of law enforcement personnel associated with the planning, organization, and implementation of the roadblock. Richard Redd, legal advisor for the Baton Rouge Police Department, testified he set up the sobriety checkpoint in conjunction with Baton Rouge City Police Chief Wayne Rogillio, who consulted with the mayor.
Redd testified about the procedure used at the checkpoint stations, particularly at the location where defendant was arrested. The D.W.I. roadblock plan was formulated with the goal of deterring drunk driving. Locations were chosen based on incidence of D.W.I. activity or alcohol related accidents. In addition, safety of both the law enforcement personnel and the motoring public were considered in site selection. All of the officers who manned the roadblocks attended two formal training sessions and received a three or four page operating procedure manual. The instant series of roadblocks was the first field application of this procedure. Halloween night was selected by Chief Rogillio because it was thought that the general public would be receptive to special efforts to keep drunk drivers off the road while children might be out. No publicity as to the actual locations and times, of the roadblocks was disseminated. However, the media did report, about one month prior to the instant checkpoint, that roadblocks would be operating in Baton Rouge at some future time.
The Highland Road checkpoint operated from about 9:30 p.m. to midnight. That operation was directly supervised by Captain Ronald B. Delaughter, a veteran of *1299 twenty-eight years with the police department. Delaughter testified that every fifth vehicle was stopped, although he had the discretion to alter the frequency based on traffic conditions. In addition, other automobiles were also stopped if violations were obvious. Upon stopping the individual, an officer engaged the driver in conversation while he was asked to produce his operator’s license. The purpose of this procedure was to provide a divided task, which gave the officer an opportunity to observe the driver’s concentration and general demeanor.
There were twelve policemen and ten police cars at the Highland Road checkpoint. Three signs preceded the checkpoint, the first one being located about three-fourths of a block from the entrance to the parking lot where every fifth car was directed. The average length of detention was approximately thirty to forty-five seconds, unless some violation was noted. Approximately one hundred twenty-three traffic citations were issued at the four roadblocks. Twelve individuals were arrested for D.W.I. The record does not clearly reveal how many D.W.I. arrests occurred at the Highland Road checkpoint, although one officer recalled that two or three individuals were taken into custody at that location.
In State v. Parms, supra, the Louisiana Supreme Court concluded that the Parms’ roadblock did not meet the requirements of the Fourth Amendment of the United States Constitution because the field officers had unbridled discretion. Parms at 1303. The Louisiana Supreme Court left open the question of whether or not D.W.I. roadblocks conducted under guidelines approved in other jurisdictions are violative of the Louisiana Constitution. Parms at 1305, on rehearing.
The Fourth Amendment to the Constitution of the United States prohibits unreasonable searches and seizures. The Louisiana Constitution protects against unreasonable searches, seizures and invasions of privacy.
Under Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), seizures are reasonable only if there are neutral limitations on the discretion of the field officers. Other factors to be weighed are: (1) the gravity of the problem; (2) the degree to which the seizure serves the public concern; and (3) the extent of the interference with individual liberty.
Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)[J held that random spot checks of motorists without articulable and reasonable suspicion of unlawful activity were unreasonable seizures under the Fourth Amendment. Because an individual’s expectation of privacy is not abandoned upon entrance into an automobile, a motorist’s freedom cannot be interferred (sic) with even for a limited time at the unbridled discretion of police officers. Absent an articulable basis for reasonable suspicion of criminal activity, Prouse prohibits regulatory automobile inspections unless there are previously established “neutral criteria” which prevent the unconstrained exercise of discretion by field officers. In dicta Prouse says that: “Questioning of all oncoming traffic at roadblock-type stops is one possible alternative” [to random stops]. [Footnotes omitted.]
State v. Parms, 523 So.2d at 1295-1296.
It is undisputed that the state and the public have a vital interest in deterring and detecting drunken driving. This interest must be balanced against the constitutional freedoms guaranteed to individuals. Generally, absent probable cause or reasonable suspicion of criminal activity, citizens should be free from police interference and harassment. Under the Fourth Amendment to the United States Constitution as interpreted by the United States Supreme Court, state roadblock interference with automobile drivers is allowed when the procedure is based on neutral criteria and effective enough in serving a compelling state interest to justify a minimal intrusion. [Footnote omitted.]
523 So.2d at 1301.
The Parms case did not approve specific guidelines for a constitutional roadblock in *1300 Louisiana. However, the opinion discussed at length, with apparent approval, guidelines applied in other jurisdictions which were found to support constitutional roadblocks. The instant roadblock is compatible with the most comprehensive schemes discussed in Parms. We find the rationale of Parms to fully support the conclusion that the roadblock herein under consideration did not violate the Fourth Amendment to the United States Constitution. See e.g., State v. Church, 530 So.2d 1235 (La.App. 2d Cir.), writs granted, 532 So.2d 107 (La.1988).
In this case, the record reveals that the instant roadblock was conducted pursuant to written departmental guidelines. Training sessions were conducted by experienced police department personnel to discuss implementation of the roadblock. Furthermore, the detention techniques of the officers were standardized and brief in duration. The roadblock was executed pursuant to specific neutral criteria designed to limit the conduct of the individual officers. The safety of both the law enforcement personnel and the general public was fully accommodated. Therefore, the potential intrusion into the public’s constitutional liberties was severely restricted.
In addition, the degree of effectiveness of this procedure is adequately documented. Sites were selected based on a high volume of D.W.I. arrests or alcohol related accidents. The general public was aware that sobriety checkpoints would be conducted in Baton Rouge. Some arrest data is available, although admittedly it was not correlated with data stemming from roving patrols. However, the number of arrests does not necessarily measure the effectiveness of the checkpoint. “If the checkpoint is properly serving its function — deterrence — it may result in no arrests at all.” Ingersoll v. Palmer, 43 Cal.3d 1321, 241 Cal.Rptr. 42, 54, 743 P.2d 1299, 1311 (1987). Moreover, such data may be difficult to quantify.
The experience both in California and in other states with sobriety checkpoints has been very limited, and no definitive statistics are available. It would be presumptuous in the extreme for this court to prohibit the use of an otherwise permissible and potentially effective procedure merely because its effectiveness is at the present time largely untested. Indeed, to do so would prevent the compilation of any data to show its effectiveness.
743 P.2d at 1311-1312.
Article I, Section 5, of the Louisiana Constitution of 1974 provides greater protection for individual rights than that provided by the Fourth Amendment of the United States Constitution. State v. Parms, supra; State v. Hernandez, 410 So.2d 1381, 1385 (La.1982). Nevertheless, the standard for determining the constitutionality of a seizure in the absence of any individual suspicion of criminal activity remains reasonableness. Parms at 1304-1305, J. Lemmon, concurring. The determination of the reasonableness of a roadblock-type seizure involves weighing the legitimate state interest in deterring drunk driving against the legitimate constitutional interest in protecting citizens from excessive governmental intrusion. Parms at 1304.
We find the state interest in deterring drunk driving and alcohol-related accidents at the particular location where defendant was arrested to be valid and supported by the record. We further conclude that, weighing this valid governmental interest against defendant’s right to privacy, the procedures used herein are reasonable and afforded minimal intrusion upon defendant’s rights.
Accordingly, we find the seizure of defendant pursuant to the instant roadblock to be constitutionally permissible under the State and United States Constitutions. The motion to suppress was properly denied.
AFFIRMED.