GRAVOIS, J.
*775 Relator, Joshua Every, seeks this Court's supervisory review of various rulings of the trial court denying his Motions to Suppress Evidence. Relator argues five assignments of error in his writ application. For the following reasons, we deny this writ application.
PROCEDURAL BACKGROUND AND FACTS
On October 27, 2016, a Jefferson Parish Grand Jury returned a true bill of indictment charging relator with violating La. R.S. 14:30 by committing the first degree murder of Taylor Friloux on June 29, 2016 while engaged in the perpetration or attempted perpetration of armed robbery, aggravated kidnapping, and second degree kidnapping upon her and during the perpetration or attempted perpetration of an aggravated burglary upon a Raising Cane's Restaurant.
On January 3, 2018, relator filed eight motions to suppress evidence, challenging evidence seized from the search of a Mercedes automobile (DM-39)[1] ; two searches of the Mercedes pursuant to warrants (DM-40 and -41); an Alcatel cell phone seized from the Mercedes (DM-42); a silver iPhone seized from the Raising Cane's (DM-43); a black Kyocera cell phone (DM-44); a black iPhone 5 (DM-45); and a black and silver iPhone 6S (DM-46). The State filed written responses to each motion. Relator's motions DM-39 through DM-46 were heard at suppression hearings held on February 1, March 9, and March 19, 2018, at which hearings the trial court heard the testimony of witnesses and pertinent evidence was admitted. On August 17, 2018, the parties presented arguments as to DM-39 through DM-41 (regarding the warrantless search and seizure of the Mercedes and the two subsequent search warrants). Relator and the State submitted on their pleadings as to DM-42 through DM-46 (searches of cell phones pursuant to warrants). The trial court denied DM-39 through DM-46 for reasons assigned from the bench at the hearing on this date.
On September 6, 2018, relator filed additional motions to suppress evidence seized from relator's Facebook account (DM-77); a black iPhone linked to Ariana Runner, a co-defendant (DM-78); the same black and silver iPhone 6S (DM-79); a cell phone belonging to Candace Rose (DM-80); a cell phone owned by Felix Santiago (DM-82); a phone owned by Taylor Friloux, the victim (the same phone seized from the manager's office)[2] (DM-84); the black Kyocera cell phone (DM-85); the black iPhone 5 (DM-86); and the black Alcatel cell phone (DM-87). The State filed responses to each of these written motions to suppress.
On November 2, 2018, the parties argued DM-77 and submitted DM-78 through DM-87 on the pleadings. After taking the motions under advisement, on November 14, 2018, the trial court denied DM-77 through DM-87.
*776 Relator filed a timely writ application in this Court. Upon review, this Court found deficiencies in the writ application, namely that it failed to contain the full transcripts of the hearings on the motions to suppress referenced in the writ application, and ordered relator to supplement the writ application with any and all relevant transcripts in an Order dated February 27, 2019. This Court further ordered relator to supplement the writ application, in accordance with Uniform Rules - Courts of Appeal, Rule 4-5(C)(8), with the State's responses to the various motions to suppress and post-hearing memoranda filed by relator. Having received the requested supplements to the writ application, this Court now considers relator's assignments of error.
ASSIGNMENT OF ERROR NO. ONE
The trial judge erred as a matter of law in finding that Det. Ricke had the right to enter the Every property and scrutinize the interior of the Mercedes for evidence after the premises had been secured and after Mr. Every had been removed from the premises (DM-39).
In this assignment, relator argues that in light of the United States Supreme Court's decision in Collins v. Virginia , --- U.S. ----, 138 S.Ct. 1663, 201 L.Ed.2d 9 (2018), the trial court erred in finding that Detective Ricke[3] lawfully entered relator's property and scrutinized the interior of the Mercedes. He argues that because Detective Ricke was within the curtilage of the home, he was required to have either probable cause to conduct the search of the Mercedes under the automobile exception to the warrant requirement or there must have been exigent circumstances present. He asserts that the Mercedes had no connection to the crime as it was located over twenty miles away from the Raising Cane's and was peered into by the police more than five hours after the incident occurred. He also argues the holding of State v. Hernandez , 410 So.2d 1381 (La. 1982) applies.
The State responded that Detective Ricke was legally justified in conducting a warrantless search of the vehicle under the automobile exception as it was probable that the Mercedes contained contraband and/or under the plain view exception. It further argued that the officers had a lawful right to access the driveway, which was not within the curtilage of the home. It argued that the Collins and Hernandez decisions are distinguishable, and that Detective Ricke more than complied with constitutional mandates by obtaining two search warrants for the Mercedes.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. State v. Aston , 12-955 (La. App. 5 Cir. 9/4/13), 125 So.3d 1148, 1156, writ denied , 13-2374 (La. 3/21/14), 135 So.3d 618. A defendant who is adversely affected may move to suppress evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained. La. C.Cr.P. art. 703(A). The trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors *777 suppression. State v. Butler , 01-907 (La. App. 5 Cir. 2/13/02), 812 So.2d 120, 124.
As a general rule, searches and seizures must be conducted pursuant to a validly executed search warrant or arrest warrant. State v. Holmes , 08-719 (La. App. 5 Cir. 3/10/09), 10 So.3d 274, 278, writ denied , 09-816 (La. 1/8/10), 24 So.3d 857. Warrantless searches and seizures are per se unreasonable unless justified by one of the exceptions to the warrant requirement. Id. When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the State bears the burden of proving that the search and seizure was justified pursuant to one of the exceptions to the warrant requirement. La. C.Cr.P. art. 703(D) ; State v. Joseph , 02-717 (La. App. 5 Cir. 6/27/03), 850 So.2d 1049, 1052, writ denied , 04-2404 (La. 6/17/05), 904 So.2d 686.
The testimony and evidence at the hearing on the motions to suppress show that a witness to the robbery identified relator as a known perpetrator and that his name was provided to Officer Matthew Glapion of the Kenner Police Department at around 2:45 a.m. Officer Glapion found relator's address at 168 River Oaks Drive in LaPlace, Louisiana, in St. John the Baptist Parish, and learned that a black Mercedes was registered to the same address. After pulling up a photo of relator, Officer Glapion drove to LaPlace where, at 5:53 a.m., he saw a black Mercedes driving away from the River Oaks house apparently being driven by relator. Because he could not see the license plate, Officer Glapion established surveillance of the house. At approximately 7:00 a.m., Officer Glapion saw the Mercedes return and pull into the driveway in front of the home's garage. Relator exited the vehicle and entered the house through a rear door on the backside of the garage. Officer Glapion called for assistance, which arrived at approximately 8:10 a.m. Relator was detained shortly thereafter without incident.
After assisting other officers with a protective sweep of the residence, Officer Glapion left the house and went over to the Mercedes, still parked in the driveway, to speak to officers standing nearby. He looked through the front windshield and observed a sleeve of coins on the front passenger floorboard. Officer Glapion did not enter the vehicle, but stayed on the scene until the arrival of Detective Ricke.
Detective Ricke testified that he arrived at relator's residence around 8:53 a.m. after relator had been detained and transported. He spoke with Officer Glapion and also observed the presence of approximately ten officers from the different agencies of Kenner Police, the U.S. Marshals, and St. John the Baptist Parish in the immediate area who had secured the scene in anticipation of the issuance of search warrants. Detective Ricke looked through the front passenger window and windshield of the Mercedes and observed the roll of coins encased in wrapper that was similar to the coin wrappers he had observed near and inside of the safe at Raising Cane's. He also observed an item he described as a "Kids Meal kind of thing" from Raising Cane's. It was determined that the Mercedes was registered to relator's mother, who also lived at the same address. Officers did not enter the Mercedes while it was parked in the driveway. The Mercedes was then towed to the Kenner Police Department while an application for a search warrant was pending.
In Collins , supra , the United States Supreme Court resolved the issue of "whether the automobile exception to the Fourth Amendment permits a police officer, uninvited and without a warrant, to enter the curtilage of a home in order to search a vehicle parked therein."
*778 Id. , 138 S.Ct. at 1668. In Collins , the property that was subject to an illegal search was a stolen motorcycle. The stolen motorcycle was parked at the defendant's girlfriend's house in a partially enclosed area at the top of the driveway and was covered by a tarp but was partially visible by investigating officers while they viewed the property from the street. An officer entered the partially enclosed portion of the driveway, lifted the tarp off the motorcycle, and photographed it. The court found that the area where the motorcycle was parked was inside a partially enclosed top portion of the driveway that adjoined the house and was within the curtilage of the home. Accordingly, the court held that "[t]he automobile exception does not permit the warrantless entry of a home or its curtilage in order to search a vehicle." Id.
In Hernandez , supra , the defendant was arrested for DWI and related traffic offenses as he parked his car in his driveway after police officers had chased him through the streets for some distance. Id. , 410 So.2d at 1383. As the defendant was escorted to the patrol car, he stated he did not want anyone driving his car. Nevertheless, in accordance with alleged police policy, the officers radioed for a wrecker to tow the car. While waiting for the wrecker, one officer returned to the private property upon which the car was parked, entered the car, and inspected its interior. He discovered marijuana cigarettes on the console between the front seats and on the left floorboard and seized the cigarettes as evidence. Id. The court held that police had no right to re-enter the private property on which the defendant's car was parked and inspect its interior, including the glove compartment, after the defendant was in custody and removed from the scene since the search of the car was not contemporaneous with the arrest, and there was no probable cause or any circumstances to justify an exception to the warrant requirement. Id. , 410 So.2d at 1383-84.
Both cases cited by relator are readily distinguishable from the instant matter. The curtilage of a home is that "area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life." State v. Salinas , 17-485 (La. App. 5 Cir. 7/6/18), 251 So.3d 1166, 1177 n. 8, writ denied , 18-1301 (La. 4/8/19), 2019 WL 1619783. It is considered part of the home itself and is therefore afforded Fourth Amendment protection. Id. To determine whether an outside area is part of the curtilage or extension of the residence's living area, courts look at four factors which indicate how intimately the area is tied to the home itself: (1) the area's proximity to the home; (2) whether the area is included within an enclosure surrounding the home; (3) whether the area is being used for the intimate activities of the home; and (4) the steps taken by the resident to protect the area from observation by passers-by. Id.
In this matter, photographs of the driveway reveal that the driveway was not enclosed but was entirely open, led to the street, and was the path on which any person would approach the front door of the house and access it from the street. The driveway was open to law enforcement officers as well as any other member of the public. Therefore, even if it was a part of the curtilage of the home, this open driveway did not enjoy the same measure of Fourth Amendment protection that a home does, nor that enjoyed by the partially enclosed driveway space where the motorcycle in Collins was parked covered by a tarp. As the Louisiana Supreme Court noted in State v. Deary , 99-0627 (La. 1/28/00), 753 So.2d 200, 201 (per curiam), "police with legitimate business may enter the areas of the curtilage which are impliedly *779 open to use by the public, and that in so doing they are free to keep their eyes open and use their other senses." It further stated that the police "have the same right as other members of the public to approach the doorway [of a home] and see what was exposed by the owner to the view of the general populace." Id. (citing State v. Dixon , 391 So.2d 836, 838 (La. 1980) ). It is also important to note that unlike in Collins , where the officer uncovered the motorcycle, and Hernandez , where the officers entered the vehicle during the search, no officer entered the Mercedes while it was parked in relator's driveway.
Relator also argued that the Mercedes had "no connection" to the crime; however, the facts show that the vehicle was clearly connected to relator, who had been identified as a perpetrator of the crime within an hour of its occurrence. Relator was seen by Officer Glapion driving the vehicle, registered to relator's mother at the address they shared, at 5:53 a.m., only hours after the crime occurred.
Accordingly, we find no abuse of the trial court's discretion in denying the motion to suppress. This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. TWO
The trial judge erred as a matter of law in not finding that Detective Ricke and the Kenner Police Department lacked the authority to tow the vehicle to Kenner without a search warrant (DM-39).
In this assignment, relator argues that the authority of a municipal law enforcement officer is limited to the territorial boundaries of the municipality in which he is commissioned unless in "hot pursuit," citing La. R.S. 33:423(A), 2 La. Atty. Gen. Op. No. 09-0159, 2010 WL 3699994. Relator argues that in this case, the officers had not been in hot pursuit of the Mercedes. Thus, the trial judge's failure to find that the Kenner Police Department officials exceeded their lawful authority in ordering the towing of Mrs. Every's car was an error of law and should be reversed.
On June 14, 2018, relator filed a "Post-Hearing Memorandum in Support of the Motion to Declare Warrantless Seizure Invalid." Therein, he argued, for the first time, that the Kenner Police Department lacked the authority to seize the Mercedes from relator's home in St. John the Baptist Parish. In its post-hearing memorandum, and at the August 17, 2018 hearing, the State argued that the Kenner Police were within their lawful authority as they were working with the St. John the Baptist Parish police and the U.S. Marshal's Task Force. The State argued that even if there was an issue with jurisdiction, exclusion of the evidence was not an appropriate remedy, and no purpose of the exclusionary rule would be served by suppression.
Here, the victim was murdered in Kenner, Louisiana, which is in Jefferson Parish, and when relator was identified shortly thereafter as a suspect, it was learned that relator lived in St. John the Baptist Parish. Officer Glapion of the Kenner Police Department and the U.S. Marshal's Task Force were sent to LaPlace to investigate. The testimony at the hearing established that this was a multi-jurisdictional investigation, and the Kenner Police Department was working with the St. John the Baptist Parish police and the U.S. Marshal's Task Force.
Not all violations of statutory restrictions, such as territorial restrictions as argued by relator, are constitutional violations. State v. Gates , 13-1422 (La. 5/7/14), 145 So.3d 288, 299. Nor has the exclusionary rule been extended to include non-constitutional violations of statutes which *780 are not designed to protect the privacy interests of citizens. "When the statutory limitation (or duty) alleged to have been violated by the officer is not designed to implement fundamental rights of privacy, this court should not employ the exclusionary rule as a device to enforce such legislative directives." Id. The Gates court noted that "[t]he statutory rules which delineate the territorial zones of responsibility of various law enforcement agencies are not designed to prevent unreasonable invasions of privacy." Id.
Considering this jurisprudence, we find that the Kenner Police Department, even if technically outside of their territorial bounds, did not act unconstitutionally in towing the vehicle, but rather did so as part of a multi-jurisdictional investigation. Thus, suppression of the evidence is not warranted as it "would not serve the administration of justice or the purpose of the legislative directing of territorial responsibility." See Gates , supra . This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. THREE
The trial judge erred as a matter of law in ruling valid the search warrants for the Mercedes were properly issued (DM-40 and -41).
In this assignment, relator challenges the validity of the two search warrants issued for the Mercedes, arguing that the affidavits in support of the warrants fail to address whether it was reasonable to believe that evidence of the crime would be found therein. He argues that the affidavits fail to connect the roll of coins to the robbery/murder, nor is it inherently suspicious to have a roll of coins in a person's car. He asserts that there was no evidence that the Mercedes was used to commit the crime or that evidence of the crime would be found in the Mercedes.
The first warrant was issued on June 29, 2016. The roll of coins and an Alcatel one-touch cell phone were seized pursuant to this warrant. The second warrant was issued on July 1, 2016 because officers were unable to access the trunk of the car during the first search, after which they acquired the trunk's keys. A search of the trunk pursuant to the second warrant yielded some Raising Cane's advertising material and plastic wrap. Both warrants were affirmed and executed by Detective Ricke of the Kenner Police Department.
When evidence is seized pursuant to a search warrant, the defendant bears the burden of proof at a hearing on his motion to suppress that evidence. La. C.Cr.P. art. 703(D) ; State v. Falcon , 13-849 (La. App. 5 Cir. 3/12/14), 138 So.3d 79, 88, writ denied , 14-769 (La. 11/14/14), 152 So.3d 877. A search warrant may be issued only upon probable cause established to the satisfaction of a magistrate, by the affidavit of a credible person, particularly describing the person or place to be searched and the things to be seized. State v. Aston , supra .
Probable cause for the issuance of a search warrant exists when the facts and circumstances, within the affiant's knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place that is to be searched. Id. The facts establishing probable cause for the warrant must be contained within the four corners of the affidavit. State v. Green , 02-1022 (La. 12/4/02), 831 So.2d 962, 969. An affidavit supporting a search warrant is presumed to be valid, and the defendant has the burden of proving that the representations made in the affidavit are false.
*781 State v. Shiell , 16-447 (La. App. 5 Cir. 12/7/16), 204 So.3d 1213, 1217, writ denied , 17-0041 (La. 9/15/17), 225 So.3d 477 ; State v. Dee , 09-712 (La. App. 5 Cir. 2/23/10), 34 So.3d 892, 899, writ denied , 10-705 (La. 10/29/10), 48 So.3d 1097.
The magistrate's determination of probable cause to issue a search warrant is entitled to significant deference on review, and "marginal cases should be resolved in favor of a finding that the issuing magistrate's judgment was reasonable." State v. Rodrigue , 437 So.2d 830, 833 (La. 1983). If the magistrate finds the affidavit sufficiently detailed and reliable to show probable cause, the reviewing court should interpret the affidavit in a realistic and common sense fashion. State v. Green , 831 So.2d at 969. Within these guidelines, courts should strive to uphold warrants in order to encourage their use by police officers. Id. The reviewing court must ensure that under the totality of the circumstances, the issuing magistrate had a "substantial basis" for concluding that probable cause existed. Id.
Further, the United States Supreme Court has also held that evidence seized pursuant to a warrant based on less than probable cause need not be suppressed if the officers who executed the warrant believed it to be validly issued. State v. Davis , 2017 WL 10118514, at *2 (La. App. 5 Cir. 12/11/17) (citing United States v. Leon , 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d. 677 (1984) ). In formulating this judicially created good faith rule, the Court reasoned that the good faith of an officer in the execution of a warrant signed by a neutral magistrate should be enough for the evidence obtained as a result of the search to be admissible. Id. Thus, the Court expressed a strong preference for warrants over warrantless searches by allowing evidence seized in constitutionally questionable searches to be admissible into evidence if the officers were relying on a validly issued warrant. Id.
The Leon Court, however, listed four scenarios where suppression is the appropriate remedy for a search conducted pursuant to a warrant: (1) the affiant misled the magistrate by including in the affidavit misleading statements which the affiant knew were false or would have known were false, except for reckless disregard for the truth; (2) the magistrate abandoned his neutral and detached role; (3) the affiant was so lacking of indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) the warrant was deficient and could not be presumed valid. Davis , supra (citing Leon , 468 U.S. at 914-15, 104 S.Ct. at 3416 ).
The affidavit supporting the first search warrant, which was made and presented to the magistrate on the same day as the crime, clearly states that relator was identified as a suspect by eyewitnesses to the crime, that he had been observed driving the Mercedes to his mother's house hours later, and was positively identified by officers as he exited the car. The affidavit also explained that the search was for the purpose of seeking evidence of the crime, including the knife or knives used to stab the victim, the various items of clothing known to be worn by the perpetrators of the robbery as shown by the restaurant's surveillance cameras, cell phones, DNA evidence, and any other evidence deemed to be pertinent to the investigation.
The affidavit supporting the second search warrant was substantially the same as the affidavit supporting the first search warrant, but additionally recites that the first search was unable to access the Mercedes' trunk due to security features, but that the keys had subsequently been obtained from the car's registered owner and that a second search warrant, for the car's trunk, was requested at that time.
*782 Upon review, we find that the facts and circumstances reflected in the affidavits were sufficient to support a reasonable belief that relator participated in the robbery, the murder of the victim, and the fair probability that evidence of the offenses may have been found in the Mercedes. Relator was seen driving the Mercedes only hours after the murder occurred. And, although relator argues there was nothing inherently suspicious about his possession of a roll of coins, Officer Glapion and Detective Ricke observed that the packaging of the roll of coins in the Mercedes was consistent with the rolls of coins found inside the Raising Cane's after the murder. Accordingly, this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. FOUR
The trial judge erred as a matter of law in denying the motions to suppress evidence seized from cell phones pursuant to search warrants (DM-42, -43, -44, -45, -46, -78, -79, -80, -82, -84, -85, -86, and -87).[4]
In this assignment, relator argues that the trial judge erred in finding that probable cause to search was established within the four corners of the warrants authorizing the search of each of the cell phones. Relator suggests that under Riley v. California , 573 U.S. 373, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014), a cell phone may not be searched without a warrant issued upon probable cause, and the essence of probable cause is a "nexus" between the thing to be searched and the crime. He notes that for each cell phone, the affidavits fail to establish a nexus between the cell phone and the robbery, or describe with any particularity the evidence which the affiant expected to be found therein.[5]
The Alcatel Warrants (DM-42 and -87)
The Alcatel cell phone was seized during the first search of the Mercedes and belonged to relator. It was searched twice under warrants. The first warrant was issued on July 13, 2016 and the second one was issued on November 9, 2016.
In his writ application, relator challenges the Alcatel warrants on the same basis as he did below in his motions to suppress (DM-42 and -87), arguing that Detective Ricke failed to particularize the evidence he expected to find, nor did he give specific reasons establishing a nexus between the phone and the crimes. Relator argues that the affidavit merely shows that the Alcatel cell phone was found in the Mercedes he was driving approximately six hours after the incident and which contained a roll of nickels. The State responded below that there was a fair probability that evidence would be found in the digital files of the phone given the fact that the phone was found in the vehicle that relator, who had already been identified as the alleged perpetrator, was seen operating and then exiting. It argued alternatively that suppression was inappropriate as the *783 officers relied upon the magistrate's determination in good faith.
In United States v. Gholston , 993 F.Supp.2d 704, 707 (E.D. Mich. 2014), a police investigation of a robbery revealed that the defendant was one of the two suspects, and he was arrested and his cell phone was seized. In support of a warrant to search the phone's contents, a federal agent detailed the robbery offense and then averred that based on his "training and experience," the phone could be expected to contain evidence that the defendant and others had used cell phones to communicate details related to the robbery. The defendant claimed that the affidavit did not include facts indicating that he or his accomplices had "actually used a cell phone in connection with" the robbery. Id. Nevertheless, the court found that the affidavit established the required nexus in that the agent had cited the defendant's joint participation in the gas station robbery along with another individual as supporting his belief that a search of the phone would contain evidence shedding light on the identities of these multiple participants and their possible pre-planning and coordination of criminal activity. Id.
Upon review, we find that the facts and circumstances reflected in the affidavit were sufficient to support a reasonable belief that relator participated in the robbery, the murder of the victim, and that evidence of the offenses may have been found in his cell phone. Detective Ricke did not explicitly include in the affidavit that he believed there was communication between the perpetrators that would be found in the cell phone, but it was alleged in the affidavit that relator and a co-defendant entered the Raising Cane's together and were armed. Accordingly, we find no abuse of discretion in the trial court's rulings denying the motions to suppress regarding this phone. This assignment of error is without merit.
The Silver iPhone Warrants (DM-43 and -84)
The silver iPhone was retrieved from the manager's office in the Raising Cane's restaurant and belonged to the victim. It was searched twice pursuant to two warrants.
Relator challenges the affidavits to search the silver iPhone on the basis that the affidavit does not say the cell phone was used to plan or commit the crime or was used in the aftermath of the crime. He argues that the trial court erred in finding that relator did not have standing to challenge the seizure of the cell phone to the extent it produces communications between him and the owner of the phone.
The probable cause affidavit included in the writ application establishes that the silver iPhone found in the manager's office belonged to the victim. Upon review, we find that the trial court was correct in finding that relator has no standing to challenge the evidence seized from the searches of the victim's cell phone. La. Const. art. I, § 5 extends standing to "[a]ny person adversely affected" by an invalid search or seizure to raise its illegality. However, the protection is not unqualified because La. Const. art. I, § 5 also presupposes that "there must be an invasion of someone's rights to privacy before there can be an unreasonable search." State v. Perry , 502 So.2d 543, 558 (La. 1986), cert. denied , 484 U.S. 872, 108 S.Ct. 205, 98 L.Ed.2d 156 (1987) ; State v. Moultrie , 15-2144 (La. 6/29/17), 224 So.3d 349, 351-52. Relator has no possessory interest or reasonable expectation of privacy in the personal property of the victim. Hence, even if relator was "adversely affected" by the search of the victim's cell phone, the victim, who had the privacy *784 interest in the cell phone, is deceased. See State v. Farris , 51,094 (La. App. 2 Cir. 12/14/16), 210 So.3d 877, 888, writ denied , 17-0070 (La. 10/9/17), 227 So.3d 828 (finding that because the deceased victim's right to privacy was not violated in the search of her cell phone, the defendant did not have standing to challenge the search of it). Accordingly, we find no abuse of discretion in the trial court's ruling regarding the victim's cell phone. This assignment of error is without merit.
The Kyocera (DM-44 and -85), iPhone 5 (DM-45 and -86), and iPhone 6S (DM-46 and -79) Warrants
The Kyocera, iPhone 5, and iPhone 6S cell phones were seized from the gold Toyota Highlander in which co-defendant Gregory Donald was a passenger when he was arrested one day after the murder. The gold Highlander had been identified as the getaway car by eyewitnesses at the robbery. The iPhone 6S belonged to Donald. It is unclear to whom the Kyocera and iPhone 5 belonged.[6] The Kyocera and iPhone 5 were searched twice. The iPhone 6S was also searched twice, but it appears that three warrants were issued because the phone was password protected at the time the first search warrant was issued. The supporting affidavits for the search warrants of the three phones, challenged together in one assignment of error, are substantially identical in terms of relating probable cause thereto.
Specifically, relator challenges the search warrants of the Kyocera, iPhone 5, and iPhone 6S on the basis that the affidavits fail to show that the cell phones belonged to a perpetrator, or to one of the victims, or were used to plan the crime, commit the crime, or in the aftermath of the crime. Relator argues that there is no particular evidence cited which the affiant expected to find, but rather the affidavits only show that the cell phones were found in the suspected getaway vehicle and under the seat in which a perpetrator was seated at the time of his arrest.
Upon review, we find that the facts and circumstances reflected in the affidavits were sufficient to support a reasonable belief that relator participated in the robbery of the Raising Cane's, the murder of the victim, and that evidence of the offenses may have been found in these cell phones. At the time the affidavits were executed, it was known that more than one suspect was involved in the robbery at the Raising Cane's and that the getaway car was a gold Highlander. Detective Ricke set forth in the affidavits that another suspect in the robbery, Mark Crocklen, had indicated that the robbery was planned one month in advance, and he (Crocklen) was contacted by relator. Further, upon surveillance of the known getaway car, Donald, who matched the description of a second armed perpetrator, was seen entering the Toyota Highlander. Under the totality of the circumstances, we find that the affidavits stated sufficient probable cause for the issuance of the search warrants. This assignment of error is without merit.
The Runner iPhone Warrant (DM-78)
The Runner iPhone was obtained from Arianna Runner, a suspected perpetrator, in the Jefferson Parish Correctional Center after her arrest in connection with the murder and was searched twice pursuant to warrants. The supporting affidavits *785 allegedly assert that Runner recruited Donald to participate in the robbery, introduced him to Joshua Every, and they planned the robbery. Relator argues that the affidavits fail to state that Runner's iPhone may have been used in recruitment, discussions, or planning, nor do they particularize the evidence expected to be found in the phone's files. Thus, relator argues that the search warrants were fatally flawed.
Upon review, we find that whereas the writ application includes the motion to suppress regarding Runner's phone and the State's response thereto, relator failed to attach a copy of the affidavit in support of the search warrants for Runner's phone. The party seeking relief is responsible for filing and attaching all documents and exhibits in connection with an application for writs. See Uniform Rules - Courts of Appeal, Rule 4-1. We are unable to adequately review this claim without the affidavit, and hence deny this argument on the showing made. Further, we note that Detective Ricke testified at the hearing on March 9, 2018 that he interviewed Runner on July 1, 2016, during which he obtained her consent to search her cell phone where conversations between herself, Donald, and relator were found. Accordingly, this assignment of error is without merit.
The Rose iPhone Warrant (DM-80)
The Rose iPhone belonged to Candace Rose and was searched three times pursuant to warrants. Allegedly, because "they were good friends and were with each other in the days leading up to the robbery," Rose received a "Snapchat" message from relator, informing her that the Raising Cane's restaurant would be robbed.
Specifically, relator challenges the warrants on the basis that because the affiant does not provide the source of the information, the affidavit does not satisfy probable cause since the commissioner could not have assessed the "veracity, reliability, or basis of knowledge" of the source. He argues that the affiant's belief that the message was likely sent by relator was mere speculation.
Relator has included with the writ application his motion to suppress the evidence seized from Rose's iPhone (DM-80) and the State's response thereto. The transcript from the March 19, 2018 hearing indicates that the affidavit for the search warrant for Rose's iPhone was admitted. However, relator has failed to attach a copy of the affidavit for this Court's review. The party seeking relief is responsible for filing and attaching all documents and exhibits in connection with an application for writs. See Uniform Rules - Courts of Appeal, Rule 4-1. Therefore, we are unable to adequately review this claim, and hence deny this assignment of error on the showing made.
The Santiago iPhone Warrants (DM-82)
The Santiago iPhone belonged to Felix Santiago, an employee at the Raising Cane's, and was searched three times under warrants. Specifically, relator challenges the affidavit on the basis that it states that Santiago may have had prior knowledge of the robbery and that he had cell phone text/call contact with the suspect. Relator argues that there is no indication when Santiago had cell phone communication with relator and no identification of the source that Santiago had prior knowledge of the plans to rob the Raising Cane's.
Relator has included with the writ application his motion to suppress the evidence seized from Santiago's iPhone (DM-82) and the State's response thereto. The transcript from the March 19, 2018 hearing indicates that the affidavit for the search *786 warrant for Santiago's iPhone was admitted. However, relator has failed to attach a copy of the affidavit for this Court's review. The party seeking relief is responsible for filing and attaching all documents and exhibits in connection with an application for writs. See Uniform Rules - Courts of Appeal, Rule 4-1. Therefore, we are unable to adequately review this claim, and hence deny this assignment of error on the showing made.
ASSIGNMENT OF ERROR NO. FIVE
The trial judge erred as a matter of law in denying the motions to suppress evidence seized from Joshua Every's Facebook account (DM-77).
In this assignment, relator alleges, as he did below in his motion to suppress evidence, that the search warrant for his Facebook account was issued without a sufficient showing of probable cause. He argues that Detective Ricke failed to provide the dates on which certain Facebook posts were made by relator, so the issuing magistrate was unable to properly determine whether the information contained in the affidavit was stale. He also alleges that Detective Ricke failed to include the race of the murder victim or that one of the victims at the Raising Cane's was black, which would have refuted Detective Ricke's assertion that the posts showed relator's "history of hatred toward the white race."
The State responded below to defendant's motion to suppress, arguing that relator's Facebook posts were public, and thus, he had no expectation of privacy in them. The State asserted that nonetheless, a search warrant subsequently was obtained and relator's posts showed his motive and intent to commit the robbery and murder. The State contended that relator's argument attempting to refute Detective Ricke's theory that relator's actions constituted a hate crime had no bearing on the constitutionality of the search warrant. The State alternatively argued that suppression would be inappropriate if there was any issue with the affidavit under the good faith exception.
At the November 2, 2018 hearing, Detective Ricke testified that during July 2016, he viewed relator's public Facebook page and utilized its public contents to complete a search warrant affidavit. He subsequently obtained private records from relator's Facebook page via a search warrant.[7]
The search warrant affidavit, in addition to the details regarding relator and Donald entering the Raising Cane's armed and relator's alleged killing of the victim and the identification of relator as the perpetrator by eyewitnesses, provided the substance of the posts observed by Detective Ricke, but not the dates upon which they were posted. At the hearing, Detective Ricke acknowledged that his affidavit failed to include these dates.
An affidavit supporting a search warrant is presumed to be valid, and the defendant has the burden of proving that the representations made in the affidavit are false. That burden requires the defendant to prove by a preponderance of the evidence that the affidavit contains intentional misrepresentations.
*787 State v. Shiell , 204 So.3d at 1217. For an affiant to make a material and intentional misrepresentation to a magistrate constitutes a fraud upon the court and will result in the invalidation of the warrant and suppression of the items seized. State v. Byrd , 568 So.2d 554, 559 (La. 1990) ; State v. Shiell , supra . However, if the misrepresentations or omissions are inadvertent or negligent, the correct procedure is for the warrant to be retested for probable cause after supplying that which was omitted or striking that which was misrepresented. Id.
A warrant may become stale if facts and circumstances at the time of its execution show that probable cause no longer exists. State v. Casey , 99-0023 (La. 1/26/00), 775 So.2d 1022, 1028, cert. denied , 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). Thus, "staleness is only an issue when the passage of time makes it doubtful that the object sought in the warrant will be at the place where it was observed." State v. Tate , 407 So.2d 1133, 1137 (La. 1981).
Upon review, we find that it does not appear that Detective Ricke intentionally left out the date of the Facebook posts or the race of one of the victims. These facts have little bearing on the core of the probable cause showing. In addition to the information regarding relator's Facebook page, the probable cause affidavit alleged that relator and Donald entered the Raising Cane's armed, and relator had stabbed the victim, ultimately leading to her death. Detective Ricke indicated that it sought this particular search warrant to discover other information relevant to the murder, robbery, and a possible hate crime. Considering what Detective Ricke was able to observe publicly on Facebook, it was reasonable to assume that further evidence would be found on relator's Facebook account. Thus, we find that the affidavit recited sufficient facts to establish probable cause for the issuance of this search warrant. This assignment of error is without merit.
CONCLUSION
For the foregoing reasons, this writ application is denied.
WRIT DENIED

"DM" is short for "Defense Motion."

This is one of the same phones that was the subject of the earlier motion to suppress.

Detective Brad Ricke with the Kenner Police Department Criminal Investigations Division testified that he was the lead detective of the June 29, 2016 homicide, which occurred at approximately 1:13 a.m. Detective Ricke arrived at Raising Cane's at 1:47 a.m., at which time relator was identified as a suspect by one witness who was there during the robbery and murder.

The particular cell phone and its corresponding motion(s) are as follows: Alcatel Phone (DM-42 and -87); Silver iPhone (DM-43 and -84); Kyocera Phone (DM-44 and -85); iPhone 5 (DM-45 and -86); iPhone 6S (DM-46 and -79); "Runner's" iPhone (DM-78); "Rose's" iPhone (DM-80); and "Santiago's" iPhone (DM-82).

In his writ application, although relator challenged two searches of each of the cell phones pursuant to warrants, and filed two motions to suppress relevant to each search, the writ application includes only one search warrant affidavit relevant to some of the cell phones (the Alcatel, black Kyocera, iPhone 5, and iPhone 6S). In his writ application, however, relator notes that the affidavits are identical in all aspects relating to probable cause. Detective Ricke testified that multiple searches of the same cell phones were conducted due to law enforcement having two download programs.

Evidence was presented that two Raising Cane's employees' cell phones were stolen during the robbery, but their cell phones were not the subject of motions to suppress. Donald's girlfriend and her mother (to whom the Toyota belonged) were in the vehicle during the traffic stop of the Toyota Highlander, but it was never developed whether those phones belonged to them.

Detective Ricke testified that relator's Facebook account was still open to the public as of the morning of the hearing. At the time of the hearing, relator had photographs of a few of the Facebook pictures-which were apparently attached as exhibits to DM-77-which he used as demonstrative evidence during examination of Detective Ricke, and it was adduced which of the posts were public and which were private. These photographs were not included with relator's writ application.